## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:  HONORABLE CLAIRE R. KELLY**

| | |
|---|---|
| **KEIRTON USA, INC., a Washington Corporation,** | Case No.: 1:21-cv-00452-CRK |
| **Plaintiff,** | MOTION FOR JUDGMENT ON THE PLEADINGS |
| **v.** | |
| **U.S. CUSTOMS AND BORDER PROTECTION, a federal agency,** | |
| **Defendant.** | |

## <u>PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>

In accordance with Rule 12(c) of the Rules of the U.S. Court of International Trade, and for the reasons set forth in the accompanying Memorandum of Points and Authorities, Plaintiff, Keirton USA, Inc. ("Keirton"), hereby moves for entry of judgment on the pleadings, seeking the relief sought in the Complaint.

Under USCIT R. 12(c), "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The Complaint alleges that Defendant, U.S. Customs and Border Protection ("CBP"), unlawfully excluded Plaintiff's merchandise.

WHEREFORE, for the reasons set forth in the accompanying Memorandum of Points and Authorities, Plaintiff moves that this Court enter judgment on the pleadings in its favor and 1) Order admission of the Subject Merchandise into the possession of the Plaintiff in Washington State; 2) Order admission of Plaintiff's like-kind merchandise used to assemble the Twister Trimmer, either fully assembled or in parts, into the possession of the Plaintiff in Washington State from the date of the Order forward; and 3) to Order Plaintiff such further and additional relief as

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

the Court may deems just, legal and/or necessary to effectuate the Court's Order.

Dated:   January 5, 2022                    BUCHALTER


                                            By: */s/ Bradley P. Thoreson*
                                            Bradley P. Thoreson, WSBA #18190
                                            bthoreson@buchalter.com
                                            Ann Y. Gong, WSBA #50864
                                            agong@buchalter.com

                                            1420 Fifth Avenue, Suite 3100
                                            Seattle, WA  98101-1337
                                            Telephone: 206-319-7052

                                            *Attorneys for Plaintiff Keirton USA, Inc.*

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:  HONORABLE CLAIRE R. KELLY**

--------------------------------------------------------------------------

| | | |
|---|---|---|
| **KEIRTON USA, INC., a Washington Corporation,** | X : | Case No.: 1:21-cv-00452-CRK |
| **Plaintiff,** | : : | PROPOSED ORDER |
| **v.** | : : | |
| **U.S. CUSTOMS AND BORDER PROTECTION, a federal agency,** | : : : | |
| **Defendant.** | : X | |

--------------------------------------------------------------------------

## ORDER

Upon consideration of Plaintiff's Motion for Judgment on the Pleadings, the accompanying memorandum of law, and all other papers and proceedings herein, and upon due deliberation, it is hereby–

**ORDERED** that Plaintiff's Motion is granted; and it is further

**ORDERED** that the denial of Plaintiff's Protest is reversed; and it is further

**ORDERED** that Plaintiff's Subject Merchandise, which is subject to the authorization exemption in 21 U.S.C. § 863(f)(1), be released into possession of the Plaintiff by the Port Director of U.S. Customs and Border Protection in Seattle, Washington; and it is further

**ORDERED** that Plaintiff's Twister Trimmer, either fully assembled or in parts, which is subject to the authorization exemption in 21 U.S.C. § 863(f)(1), be permitted   for Plaintiff's import into the State of Washington.

**SO ORDERED.**

_____
Judge Claire R. Kelly

Dated: _____, 2022
New York, NY

CASE NO. - 1:21-cv-00452-CRK

**BUCHALTER**
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA  98101-1337
TELEPHONE: 206.319.7052

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:  HONORABLE CLAIRE R. KELLY**

| | | |
|---|---|---|
| **KEIRTON USA, INC., a Washington Corporation,** | X : : | Case No.: 1:21-cv-00452-CRK |
| | : : | |
| **Plaintiff,** | : : | MOTION FOR JUDGMENT ON THE PLEADINGS |
| | : : | |
| **v.** | : : | |
| | : : | |
| **U.S. CUSTOMS AND BORDER PROTECTION, a federal agency,** | : : : | |
| | : : | |
| **Defendant.** | : X | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Dated:   January 5, 2022                BUCHALTER

By: */s/ Bradley P. Thoreson*
    Bradley P. Thoreson, WSBA #18190
    bthoreson@buchalter.com
    Ann Y. Gong, WSBA #50864
    agong@buchalter.com

    1420 Fifth Avenue, Suite 3100
    Seattle, WA  98101-1337
    Telephone: 206-319-7052

    *Attorneys for Plaintiff Keirton USA, Inc.*

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA  98101-1337
TELEPHONE: 206.319.7052

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

STATEMENT OF FACTS .......................................................................................2

STANDARD OF REVIEW ......................................................................................4

ANALYSIS...........................................................................................................4

I.    The Authorization Exemption of 21 U.S.C. § 863(f)(1) is Plain and Unambiguous
      and Must Be Applied Accordingly. ..........................................................5

      a.    When the Authorization Exemption Exists, the Prohibitions in the Entirety of
            Section 863 "Shall Not Apply," and CBP Has No Discretionary Power. ..............7

      b.    The Authorization Exemption Dictates that Under State Law Authority, the
            CBP Cannot Exclude the Subject Merchandise Purely as "Drug
            Paraphernalia."................................................................................8

      c.    Plaintiff Qualifies for the Authorization Exemption. ...........................................10

            i.    Plaintiff is Considered a "Person" Under Section 863. ...........................10

            ii.   Plaintiff is Authorized by State Law to Import Subject Merchandise. ......11

II.   CBP's Position Disregards Congressional Intent and Conflicts with the Natural
      Reading of 21 U.S.C. § 863(f)(1). ...........................................................12

CONCLUSION.....................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akebia Therapeutics, Inc. v. Azar*,
    976 F.3d 86 (1st Cir. 2020)................................................................13
*Bailey v. United States*,
    516 U.S. 137 (1995)..........................................................................13
*Connecticut Nat. Bank v. Germain*,
    503 U.S. 249 (1992)........................................................................5, 12
*Dodd v. United States*,
    545 U.S. 353 (2005)...........................................................................5

*Forest Labs., Inc. v. United States,*
   476 F.3d 877 (Fed. Cir. 2007) ................................................................. 4
*GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.,*
   64 F.3d 1112 (7th Cir. 1995) ................................................................... 4
*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*
   530 U.S. 1 (2000) ..................................................................................... 5
*Herbert Abstract Co. v. Touchstone Properties, Ltd.,*
   914 F.2d 74 (5th Cir. 1990) ..................................................................... 3
*Hibbs v. Winn,*
   542 U.S. 88 (2004) ................................................................................. 13
*NZ Lamb Co. v. United States,*
   40 F.3d 377 (Fed. Cir. 1994) ................................................................... 4
*Tyler v. Cain,*
   533 U.S. 656 (2001) ................................................................................. 5
*United States v. Gonzales,*
   520 U.S. 1 (1997) ..................................................................................... 5
*Universal Steel Prods. v. United States,*
   495 F. Supp. 3d 1336 (Ct. Int'l Trade 2021) .......................................... 4

## Statutes

19 U.S.C. § 1595a(c)(2)(A) ............................................................................. 5, 7
21 U.S.C. § 863 ............................................................................................... *passim*
21 U.S.C. § 863(a) ........................................................................................... 5, 7
21 U.S.C. § 863(a)(3) ...................................................................................... *passim*
21 U.S.C. § 863(d) ............................................................................................... 13
21 U.S.C. § 863(f) ................................................................................................ 10
21 U.S.C. § 863(f)(1) ...................................................................................... *passim*
21 U.S.C. § 863(f)(2) ............................................................................................. 1
28 U.S.C. § 2201 ................................................................................................... 1
2A N. Singer, Statutes and Statutory Construction § 46.06, pp 181-186 (rev. 6th ed.
   2000) .................................................................................................... 13
Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513,
   84 Stat. 1236 ...................................................................................... 5, 7
Controlled Substances Act of 1970 (21 U.S.C. § 801 et. seq.) ............................. 3, 5, 6
Dictionary Act, 1 U.S.C. § 1 ............................................................................... 10
Mail Order Drug Paraphernalia Control Act of 1986, Pub. L. 99-570, 100 Stat. 3207-
   51, 21 U.S.C. § 863(d) .................................................................... *passim*
Marijuana Freedom and Opportunity Act ............................................................. 6
RCW 69.50.325 *et seq.* ....................................................................................... 10
2013 Wash. Laws ch. 3, § 20(3) .......................................................................... 11
Wash. Rev. Code Ann. § 46.04.586 ..................................................................... 11
Wash. Rev. Code Ann. § 46.04.5055 ................................................................... 11
Wash. Rev. Code Ann. § 46.20.308 ..................................................................... 11
Wash. Rev. Code Ann. § 46.61.502-506 .............................................................. 11
Wash. Rev. Code Ann. § 69.50.101-609 .............................................................. 11

Wash. Rev. Code Ann. § 69.50.412.....................................................................................11

**Regulations**

19 C.F.R. § 151.16(f).......................................................................................................3
19 C.F.R. § 151.16(j).......................................................................................................7
19 C.F.R. § 174.21(b)......................................................................................................3
19 C.F.R. § 177.9(a).......................................................................................................12
WAC § 314-55-005-540...................................................................................................11
WAC § 314-55-010 (27)................................................................................................9, 11

**Other Authorities**

131 CONG. REC. 5828-29 (1985) ....................................................................................8
*Drug Paraphernalia: Hearing Before the H. Select Comm. On Narcotics Abuse and Control*, 96th Cong. 33 (1979)...........................................................................5, 8
https://www.ojp.gov/pdffiles1/Digitization/134764NCJRS.pdf (last accessed January 3, 2022) ...........................................................................................................................9
MORE Act, H.R. 3884, 116th...........................................................................................6
Rules of the U.S. Court Rule 12(c)...............................................................................1, 3
Statement of Irvin B. Nathan, Deputy Assistant Att'y Gen., Criminal Division, Department of Justice ..............................................................................................5, 8

CASE NO. - 1:21-cv-00452-CRK

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA  98101-1337
TELEPHONE: 206.319.7052

iii

## INTRODUCTION

In accordance with Rule 12(c) of the Rules of the U.S. Court of International Trade ("CIT"), Plaintiff, Keirton USA, Inc. ("Keirton"), respectfully submits this Motion for Judgment on the Pleadings to seek relief sought in Plaintiff's Complaint for a Declaratory Judgment Under 28 U.S.C. § 2201 ("Complaint").

This case concerns the United States Customs and Border Protection (CBP)'s deemed denial of Plaintiff's protest against the exclusion from entry into the United States, at the port of Seattle, Washington, of certain motor components (the "Subject Merchandise") used to assemble its Twister Trimmer. Following importation, the Subject Merchandise would be assembled with other parts to create the Twister Trimmer, a machine used in the harvesting of cannabis products, including hemp and marijuana.

There are no material facts in dispute. For purposes of this case, Plaintiff stipulates that the Subject Merchandise meets the federal statutory definition of "drug paraphernalia." *See* Mail Order Drug Paraphernalia Control Act of 1986, Pub. L. 99-570, 100 Stat. 3207-51, 21 U.S.C. § 863(d) ("Drug Paraphernalia Control Act"). Plaintiff further stipulates that the Subject Merchandise is not traditionally intended for use with tobacco products. *See* 21 U.S.C. § 863(f)(2). Having stipulated that the Subject Merchandise is "drug paraphernalia," Plaintiff submits that it is nonetheless exempt from the Federal prohibition against importing "drug paraphernalia," because the Federal law in 21 U.S.C. § 863(f)(1) exempts "any person authorized by local, State, or Federal law to manufacture, possess, or distribute" marijuana[1] paraphernalia.[2] *See* 21 U.S.C. § 863(f)(1), (a)(3). As Washington State law authorizes Plaintiff to manufacture, possess, and distribute marijuana

---

[1] The terms "cannabis" and "marijuana" are often used interchangeably.
[2] The definition of "drug paraphernalia" under 21 U.S.C. § 863(d) includes any equipment primarily intended or designed for use in manufacturing or processing marijuana.

BUCHALTER
1420 Fifth Avenue, Suite 3100
Seattle, WA  98101-1337
Telephone: 206.319.7052

paraphernalia, its merchandise may not lawfully be excluded from the United States as unlawful "drug paraphernalia."

CBP refuses to apply the law and exemption as Congress intended. In fact, CBP's interpretation of the Drug Paraphernalia Control Act suggests that the exemption is meaningless, which is not allowed. As a result, the Court should grant Plaintiff's Motion and enter judgment on the pleadings in its favor, directing CBP to allow the Twister Trimmer, either fully assembled or in parts, to be imported into the United States, and specifically Washington State, into Plaintiff's possession, pursuant to the authorization exemption of 21 U.S.C. § 863(f)(1). This Court should also grant the relief requested in the Complaint and enter a declaratory judgment in Plaintiff's favor, finding that Congress did intend that Plaintiff, as a corporate "person," is entitled to the rights created in the exemption in 21 U.S.C. § 863(f)(1), as the State of Washington has legalized the production, distribution, and consumption of marijuana.

## STATEMENT OF FACTS

Keirton is a Washington State company that manufactures agricultural equipment used to process cannabis and other farm goods, including kale and hops. Keirton imports parts and components into Washington State for assembly of its agricultural equipment. The primary finished product is the Twister Trimmer, a machine that separates branches from the leaves and crop heads and includes vacuum systems that vacuum the waste from agricultural processing. All work performed by Keirton in Washington State is legal under Washington State law, and Keirton ensures its end users are governmentally licensed and approved businesses operating in conformance with local and State law.

Keirton imported the Subject Merchandise, consisting of components for the Twister Trimmer, into the United States at the Port of Seattle, Washington on or around March 23, 2021

BUCHALTER
1420 Fifth Avenue, Suite 3100
Seattle, WA  98101-1337
Telephone: 206.319.7052

(shipment No. Sq4-03475065). CBP detained the Subject Merchandise shipment on March 24, 2021.

On April 15, 2021, CBP issued a CF-28 Request for Information on the Subject Merchandise, asking Keirton to specify the type of agricultural crop that would be harvested by the Subject Merchandise, and inquired whether the Subject Merchandise would be used to manufacture, produce, or process a product identified under the Controlled Substances Act of 1970 (21 U.S.C. § 801 et. seq.). The CF-28 Request also asked Keirton to explain why the imported articles were authorized under Federal law to enter the United States. On April 20, 2021, Keirton responded to the CBP inquiry that the Twister Trimmer components could be used to harvest cannabis (hemp and marijuana), barley, and hops, and that the Subject Merchandise was authorized for import under 21 U.S.C. § 863(f)(1).

When CBP failed to make a final determination within 30 days after the Subject Merchandise was presented for Customs examination, the Subject Merchandise was deemed excluded, pursuant to 19 C.F.R. § 151.16(f). As "such a deemed exclusion may be the subject of a protest," Keirton formally protested CBP's exclusion of the Subject Merchandise on June 15, 2021. 19 C.F.R. § 151.16(f). *See* Complaint, Keirton's Protest Form 19 and Corresponding Attachment, Exhibits A and B. Keirton's Protest was deemed denied pursuant to 19 C.F.R. § 174.21(b) on July 14, 2021, "the 30th day after the day on which the protest was filed…" 19 C.F.R. § 174.21(b). The Subject Merchandise remains in the exclusive control of CBP.

Plaintiff timely filed this action to challenge the denial of its protest on August 19, 2021 and to seek out a declaratory judgment that it was entitled to the statutory application of the Congressionally created exemption to its Twister Trimmer components.

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA  98101-1337
TELEPHONE: 206.319.7052

## STANDARD OF REVIEW

Under Rule 12(c), "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noted facts." *Herbert Abstract Co. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citations omitted). A motion for judgment on the pleadings may be granted if the moving party is entitled to judgment as a matter of law. *NZ Lamb Co. v. United States*, 40 F.3d 377, 380 (Fed. Cir. 1994); *see also Forest Labs., Inc. v. United States*, 476 F.3d 877, 881 (Fed. Cir. 2007) ("Judgment on the pleadings is appropriate where there are no material facts in dispute and the party is entitled to judgment as a matter of law."); *Universal Steel Prods. v. United States*, 495 F. Supp. 3d 1336, 1342 (Ct. Int'l Trade 2021). A ruling on a motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b) for failure to state a claim. *See GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995).

## ANALYSIS

This action presents a crucial federal legal question: whether CBP may disregard the authorization exemption specifically carved out by Congress in 21 U.S.C. § 863(f)(1), which requires the evaluation of Federal, State, and local authorizations in determining the admissibility of goods meeting the Federal definition of "drug paraphernalia." Specifically, the question is whether CBP misapplied the law in denying Plaintiff's Subject Merchandise entry into the United States when it was legal in Washington State, where the port of entry is located. The statutory text plainly and unambiguously expresses that the prohibitions under 21 U.S.C. § 863 do not apply to

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

persons authorized by State law to import the drug paraphernalia.

**I.      The Authorization Exemption of 21 U.S.C. § 863(f)(1) is Plain and Unambiguous and Must Be Applied Accordingly.**

Congress wrote an exemption into 21 U.S.C. § 863 that expressly states that the Section does not apply in determining admissibility if a person is authorized by local, State, or Federal law to distribute the drug paraphernalia. *See* 21 U.S.C. § 863(f)(1). Congressional intent is clear: local and State law should control when in conflict with Federal law with regards to drug paraphernalia.[3] The admissibility of Subject Merchandise into the United States is therefore governed by State law, as it falls under the authorization exemption in Section 863.

Settled principles of statutory construction provide that this Court must first determine whether the statutory text is plain and unambiguous, and if so, then the statute must be applied according to its clear terms. *See e.g.*, *Dodd v. United States*, 545 U.S. 353, 259 (2005); *United States v. Gonzales*, 520 U.S. 1, 4 (1997); *Tyler v. Cain*, 533 U.S. 656, 663 (2001). Congress "says in a statute what it means and means in a statute what it says there[.]" *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992); *see also Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000).

The text of 21 U.S.C. § 863(f)(1) is plain and unambiguous. Merchandise imported into the United States in violation of the drug paraphernalia restrictions of the Drug Paraphernalia Control Act, 21 U.S.C. § 863, can be excluded and seized by CBP under authority of 19 U.S.C. §

---

[3] *See Drug Paraphernalia: Hearing Before the H. Select Comm. On Narcotics Abuse and Control*, 96th Cong. 33 (1979) (statement of Irvin B. Nathan, Deputy Assistant Att'y Gen., Criminal Division, Department of Justice) (explaining that the DOJ preferred not to involve itself in regulating drug paraphernalia because "[t]he Federal Government has limited resources" and must "allocate those resources in the way [it] think[s] is best to attach the overall drug problem"); and the 1980 House Select Committee on Narcotics issued a finding "that regulation of the paraphernalia industry can best be accomplished at the State and local government levels" (STAFF OF H. SELECT COMM. ON NARCOTICS ABUSE & CONTROL, 96TH CONG., REP. ON DRUG PARAPHERNALIA 17 (Comm. Print 1980)).

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA  98101-1337
TELEPHONE: 206.319.7052

1595a(c)(2)(A). *See* 21 U.S.C. § 863(a). Section 863 makes it "unlawful for any person… to import or export drug paraphernalia." *Id*. at § 863(a)(3). The federal definition of "drug paraphernalia" covers a seemingly limitless range of items used to prepare, conceal, and ingest controlled substances.[4] "Drug paraphernalia" is defined as "… any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful under this subchapter. It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, methamphetamine, or amphetamines into the human body…" *Id*. at § 863(d). Section 863 makes unlawful certain paraphernalia-related activities, including the importation of goods meeting the definition of "drug paraphernalia," *id*. at § 863(a)(3), but these prohibitions are not absolute. As described in the introduction, marijuana is included in the definition of drug paraphernalia and therefore is an intended beneficiary of the exemption.

Congress is actively contemplating changes to the CSA that would tax and regulate marijuana at the federal level as many States do[5], but the current laws governing "drug paraphernalia" already provide that the Subject Merchandise in this circumstance is <u>not</u> prohibited from importation. The exemption in Section 863 enacted by Congress removes the ban on importing drug paraphernalia when State or local law provide authorization. Subsection (f)(1) <u>unequivocally requires</u> consideration of local, State, and/or Federal authorizations of the

---

[4] *See e.g.*, Controlled Substances Act ("CSA"), Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, 84 Stat. 1236 (codified as amended at 21 U.S.C. §§ 801 *et seq*.).
[5] Several bills have been introduced to de-schedule and tax marijuana at the Federal level, including the MORE Act, H.R. 3884, 116th Cong. (2019) and the Marijuana Freedom and Opportunity Act, S. 1552, 116th Cong. (2019).

manufacture, possession, or distribution of merchandise meeting the federal definition of "drug paraphernalia." *See* 21 U.S.C. § 863(f)(1). Specifically, the exemption states that "[t]his section shall not apply to… any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items." *Id*.

This authorization exemption excuses Plaintiff from the prohibitions in the entirety of Section 863. Additionally, as Washington State has legalized marijuana, the State law authority governs that the Subject Merchandise is admissible as "drug paraphernalia." As Plaintiff has met all the required elements in the authorization exemption, CBP must apply the exemption to the Subject Merchandise by allowing the Plaintiff to import and all other components of its Twister Trimmer, which are all legal under Washington State law.

     **a.**     **When the Authorization Exemption Exists, the Prohibitions in the Entirety of Section 863 "Shall Not Apply," and CBP Has No Discretionary Power.**

CBP selectively relies on enforcement authority provided by Section 863 while ignoring the authorization exemption in subsection (f)(1). Merchandise entered in violation of the drug paraphernalia restrictions of the Drug Paraphernalia Control Act can be seized by CBP under the authority of 19 U.S.C. § 1595a(c)(2)(A), 21 U.S.C. § 863(a)(3), and excluded by application of 19 C.F.R. § 151.16(j) (which provides CBP authority to exclude rather than seize prohibited merchandise). However, 19 C.F.R. § 151.16(j) only authorizes the seizure, forfeiture, or exclusion of merchandise "if otherwise provided by law." CBP's exclusion of the Subject Merchandise may be correct if Congress had not included subsection (f)(1) in the Drug Paraphernalia Control Act, which states that the entirety of Section 863, including the import prohibition of § 863(a)(3), "shall not apply" to persons authorized by state law to manufacture, possess, or distribute drug paraphernalia.  Furthermore, the exemption does not provide CBP with discretionary power. The exemption expresses that if State law authorization exists, then the merchandise is excluded from

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA  98101-1337
TELEPHONE: 206.319.7052

CBP's right to exclude it as drug paraphernalia.

The word "section" has a clear meaning under the United States Code. The U.S. Code codifies, by subject matter, the general and permanent laws of the United States. Here, 21 U.S.C. § 863 is found within Title 21 ("Food and Drugs"), at Chapter 13 ("Drug Abuse Prevention and Control"), Subchapter I ("Control and Enforcement"), Part D ("Offenses and Penalties"), Section 863 ("Drug Paraphernalia"). There is no doubt that subsection (f)(1)'s use of the word "section" refers to the entirety of 21 U.S.C. § 863.

CBP's interpretation of Section 863 disregards the clear intent of Congress, which requires law enforcement officers acting under Section 863(a) authority to recognize and adhere to State authorization regimes. Plaintiff's Subject Merchandise is not imported in violation of the Drug Paraphernalia Control Act's authority. In fact, the Subject Merchandise is imported lawfully under an authorization exemption that CBP refuses to recognize.

**b.     The Authorization Exemption Dictates that Under State Law Authority, the CBP Cannot Exclude the Subject Merchandise Purely as "Drug Paraphernalia."**

CBP lacks authority to exclude the Subject Merchandise. The authorization exemption prescribes that CBP has no authority to seize or exclude imported "drug paraphernalia" as an importation contrary to law when state law authorizes the manufacture, possession, or distribution of such goods. The legislative history around the Paraphernalia Control Act clearly shows that Congress empowered States to enact laws to shield individual or corporate persons from consequences that may otherwise attach to violations of the Act.

It appears that the authorization exemption was adopted because Congress intended for states and local governments to take a bigger role in regulating paraphernalia. Legislative history specifically regarding the (f)(1) exemption does not exist primarily because Congress enacted 21

U.S.C. § 863 as part of an omnibus bill, but Congress recognized there had to be exemptions to the Paraphernalia Control Act. The original drafted Act did not include any exemptions of use. 131 CONG. REC. 5828-29 (1985). Both chambers of Congress later proposed early versions of the authorization exemption, showing that Congress understood the need for exemptions on what is defined as "drug paraphernalia." In addition, there is evidence from hearings to indicate that Congress wanted states to take on a broader role in regulating drug paraphernalia.[6] The Department of Justice Drug Paraphernalia Manual further emphasizes that "[federal enforcement] was not thought to represent the most efficient or sensible allocation of federal drug enforcement resources." *See* U.S. Dep't of Justice, Drug Paraphernalia: Federal Prosecution Manual 1 (1991) ("DOJ Drug Paraphernalia Manual of 1991"), accessible at https://www.ojp.gov/pdffiles1/Digitization/134764NCJRS.pdf (last accessed January 3, 2022).

Considering that this case involves the exclusion of components that will be assembled to create agricultural harvesting equipment, it is also relevant to note that Congress, in enacting the Paraphernalia Control Act, deliberately removed language from the Act's predecessor, the Model Drug Paraphernalia Act, Drug Enforcement Agency (1979), concerning merchandise used in the growing and harvesting of controlled substances. This strongly suggests that Congress never intended Section 863(d) to capture within the definition of "drug paraphernalia" merchandise used in farming, cultivating, and harvesting. The DOJ Drug Paraphernalia Manual of 1991 even notes that "equipment used primarily for 'planting, propagating, cultivating, growing, harvesting…' are

---

[6] *See Drug Paraphernalia: Hearing Before the H. Select Comm. On Narcotics Abuse and Control*, 96th Cong. 33 (1979) (statement of Irvin B. Nathan, Deputy Assistant Att'y Gen., Criminal Division, Department of Justice) (explaining that the DOJ preferred not to involve itself in regulating drug paraphernalia because "[t]he Federal Government has limited resources" and must "allocate those resources in the way [it] think[s] is best to attach the overall drug problem"); and the 1980 House Select Committee on Narcotics issued a finding "that regulation of the paraphernalia industry can best be accomplished at the State and local government levels" (STAFF OF H. SELECT COMM. ON NARCOTICS ABUSE & CONTROL, 96TH CONG., REP. ON DRUG PARAPHERNALIA 17 (Comm. Print 1980)).

not expressly included in the [Paraphernalia Control Act's] definition of drug paraphernalia. *Supra* at 3.

The legislative history around Section 863 supports the idea that (f)(1) is intended to exempt State-authorized activities for Plaintiff's Subject Merchandise. *See* WAC 314-55-010 (27) ("Items for growing, cultivating, and processing marijuana… are not considered 'paraphernalia.'").While recognizing that marijuana is, currently, a federally controlled substance, Washington State (the port of entry and where the detention and exclusion took place) has legalized the manufacture and sale of marijuana. Under Washington law, marijuana manufacture, processing, sales, and consumption *is* authorized by State law. *See, e.g.,* RCW 69.50.325 *et seq.* Therefore, the exemption applies, and the Subject Merchandise should never have been excluded. When viewed in light of the authorization exemption, the Twister Trimmer as a whole or as components should not be excluded from import into Washington State.

### c.    Plaintiff Qualifies for the Authorization Exemption.

CBP lacks authority to exclude the Subject Merchandise because Plaintiff meets all elements required to qualify for the authorization exemption. To qualify for the 21 U.S.C. § 863(f)(1) exemption, Plaintiff must satisfy the following three factors: (1) the Subject Merchandise must meet the § 863(d) definition of "drug paraphernalia"; (2) Plaintiff must be a "person" as the term is used in subsection (f); and (3) Plaintiff must be authorized by local, state, or federal law to possess, distribute, or manufacture the Subject Merchandise. As discussed above, the Subject Merchandise meets the federal definition of "drug paraphernalia," and therefore Plaintiff has satisfied the first factor.

### i.    Plaintiff is Considered a "Person" Under Section 863.

As Congress has established that the use of "person" in statutes encompasses corporate

persons, Plaintiff is a "Person" as envisioned by 21 U.S.C. § 863(f). Corporate personhood is the legal notion that a corporation has at least some of the legal rights and responsibilities enjoyed by natural persons. The Dictionary Act, 1 U.S.C. § 1, provides: "In determining the meaning of any Act of Congress, unless the context indicates otherwise… the words 'person' and 'whoever' include corporations, companies, associations… as well as individuals." There is nothing in the Paraphernalia Control Act that suggest a congressional intent to depart from the Dictionary Act definition of "person." Therefore, Plaintiff, as a "Person," is capable of qualifying for the authorization exemption and thus satisfies the second factor.

### ii.      Plaintiff is Authorized by State Law to Import Subject Merchandise.

CBP lacks authority to exclude or seize the Subject Merchandise when it is being imported in a state that has authorized the goods in question. The laws and regulations of the state of importation govern the application of the authorization exemption. The Subject Merchandise is exempt from the import prohibitions of 21 U.S.C. § 863(a)(3) because the laws in the state where the Subject Merchandise was imported, and is currently detained, authorize the possession, distribution, and manufacture of marijuana paraphernalia. Washington State authorization laws neuter CBP's power to enforce the import prohibitions in Section 863.

Washington State legalized the recreational use of marijuana in 2012 when its citizens voted to pass Initiative 502, 2013 Wash. Laws ch. 3, § 20(3) ("I-502"). According to the Revised Code of Washington, a person in the State of Washington violates the drug paraphernalia laws if they use, deliver, or possess any "equipment, products, [or] materials of any kind" to "plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance **_other than marijuana_**." Wash. Rev. Code Ann. § 69.50.412

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

(emphasis added); *see also* Wash. Admin. Code § 314-55-010 (27) ("Items for growing, cultivating, and processing marijuana… are not considered 'paraphernalia.'").[7] As Plaintiff is importing into Washington State, it has met the third and final factor to qualify for the authorization exemption. CBP's refusal to consider or apply Washington State law as required by 21 U.S.C. § 863(f)(1) is unlawful, as is CBP's denial of Plaintiff's protest.

## II.    CBP's Position Disregards Congressional Intent and Conflicts with the Natural Reading of 21 U.S.C. § 863(f)(1).

What Congress has said in § 863(f)(1) is clear: a State can authorize the possession, manufacture, and distribution of drug paraphernalia, and where it does, the federal government cannot enforce 21 U.S.C. § 863(a)(3). Courts "must presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank*, 503 U.S. at 253-254. CBP's position, however, selectively applies the prohibitions of the Paraphernalia Control Act without regard for the authorization exemption.

CBP's position, as set out in HQ H306125 (August 5, 2020) refuses to recognize subsection (f)(1) in any circumstance because, according to the agency "[i]n the context of 21 U.S.C. § 863, Federal law does not 'authorize' the importation of drug paraphernalia under any circumstances."[8] But this rationale only addresses the authority of the Federal government to authorize otherwise prohibited conduct under the authorization exemption of § 863(f)(1), and as discussed above, Congress recognized that the federal government's declination to provide subsection (f)(1) authorizations does not limit or curtail authorizations given by State or local laws. *See* 21 U.S.C. § 863(f)(1). In HQ H306125, CBP goes on to note that federal law supersedes state law when there

---

[7] *See also e.g.,* Wash. Rev. Code Ann. §§ 46.04.586, 46.04.5055, 46.20.308, 46.61.502-506; Wash. Rev. Code Ann. §§ 69.50.101-609; Wash. Admin. Code § 314-55-005-540.

[8] CBP rulings represent the official position of CBP on the issue discussed and are binding on all CBP personnel. 19 C.F.R. § 177.9(a).

BUCHALTER
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101-1337
Telephone: 206.319.7052

is a conflict, and since possession and use of marijuana is not legal at the federal level, state legalization of marijuana and/or marijuana paraphernalia has no bearing on the authorization exemption. However, there is no conflict between state and federal law when § 863(f)(1) explicitly requires consideration of state laws. Under subsection (f)(1), a State is free to regulate drug paraphernalia authorization as it sees fit.[9]

The law does not give CBP the discretion to refuse to consider State and local laws and, in fact, Congress. Put another way, CBP has no authority to ignore or disregard 21 U.S.C. § 863(f)(1). If CBP's interpretation of its own authority is correct, the exemptions Congress wrote into the drug paraphernalia law are wholly superfluous: once CBP determines that an importation consists of "drug paraphernalia," the agency would be free to exclude or seize the merchandise without considering whether the applicable state law provides authorization for the importer's conduct. In effect, the agency would be given license to read 21 U.S.C. § 863(f)(1) out of the law entirely. Interpretations of a statute which render a statute, or any part of it, nugatory, are strongly disfavored and to be avoided if any other interpretation which avoids that result is available. *Akebia Therapeutics, Inc. v. Azar,* 976 F.3d 86, 96-97 (1st Cir. 2020). Statutes must be construed so as to avoid rendering superfluous any statutory language. *Bailey v. United States*, 516 U.S. 137, 146 (1995); *Hibbs v. Winn,* 542 U.S. 88 (2004) ("The rule against superfluities complements the principle that courts are to interpret the words of a statute in context."); *see also* 2A N. Singer, Statutes and Statutory Construction § 46.06, pp 181-186 (rev. 6th ed. 2000) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant … " (footnotes omitted)).

CBP's interpretation of § 863(f)(1), as set out in HQ H306125 (August 5, 2020), and reflected in its treatment of the Subject Merchandise, conflicts directly with the only natural reading of the

---

[9] It is noteworthy that nearly every state has now legalized marijuana in one form or another.

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

statutory text. Congress clearly provided that the import prohibition is inapplicable when State authorization exists. Subsection (f)(1) therefore limits subsection (a)(3)'s import prohibition to circumstances where goods are imported into a State where no State or local law authorizes the possession, manufacture, or distribution of marijuana paraphernalia.

## CONCLUSION

CBP's exclusion of the Subject Merchandise is unlawful and disregards the clear intent of Congress. Congress intended to recognize State laws governing merchandise meeting the Federal definition of "drug paraphernalia," but CBP ignores the mandated congressional exemption found in 21 U.S.C. § 863(d), (f)(1). CBP's decision to disregard State laws concerning drug paraphernalia is simply not permitted when Congress has already created an explicit exemption. CBP wrongfully excluded the Subject Merchandise from entry, and its deemed denial of Plaintiff's Protest is unlawful.

Having met the three factor test, Plaintiff requests that this Court order the admission of the Subject Merchandise into the possession of the Plaintiff in Washington State. Additionally, Plaintiff requests that this Court require CBP to admit the Twister Trimmer, either assembled on in components, into the possession of the Plaintiff in Washington State from the date of the Order forward; and that this Court enter any other Orders necessary to effectuate the same.


Dated:   January 5, 2022                    BUCHALTER


By: */s/ Bradley P. Thoreson*
    Bradley P. Thoreson, WSBA #18190
    bthoreson@buchalter.com
    Ann Y. Gong, WSBA #50864
    agong@buchalter.com

    1420 Fifth Avenue, Suite 3100

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

Seattle, WA  98101-1337
Telephone: 206-319-7052

*Attorneys for Plaintiff Keirton USA, Inc.*

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  HONORABLE CLAIRE R. KELLY**

| | |
|---|---|
| **KEIRTON USA, INC., a Washington Corporation,** | X   Case 1:21-cv-00452-CRK |
| | : |
| | : |
| **Plaintiff,** | :   MOTION FOR JUDGMENT ON THE PLEADINGS |
| | : |
| **v.** | : |
| | : |
| **U.S. CUSTOMS AND BORDER PROTECTION, a federal agency,** | : |
| | : |
| **Defendant.** | : |
| | X |

### CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing MEMORANDUM OF POINTS AND AUTHORITIES

IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS is in

compliance with Chambers Procedure Rule 2(B) and contains 4367 words.

Respectfully submitted,


By: */s/ Bradley P. Thoreson*
    Bradley P. Thoreson, WSBA #18190
    bthoreson@buchalter.com
    Ann Y. Gong, WSBA #50864
    agong@buchalter.com

    1420 Fifth Avenue, Suite 3100
    Seattle, WA  98101-1337
    Telephone: 206-319-7052

    *Attorneys for Plaintiff Keirton USA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

☑    **ELECTRONICALLY** I hereby certify that on January 5, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all participants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/ Pandy Savage McVay*
Pandy Savage McVay, Legal Assistant

BN 49011715v2

CASE NO. - 1:21-cv-00452-CRK

**BUCHALTER**
1420 Fifth Avenue, Suite 3100
Seattle, WA  98101-1337
Telephone: 206.319.7052

17