UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, JUDGE

—————————————————————————
KEIRTON USA, INC.,                          :
                                            :
                        Plaintiff,          :
                                            :        Court No. 21-00452
                v.                          :
                                            :
UNITED STATES,                              :
                                            :
                        Defendant.          :
—————————————————————————:

## <u>ORDER</u>

Upon consideration of defendant's cross-motion for judgment on the pleadings,

plaintiff's motion for judgment on the pleadings, other papers on file, and upon due deliberation;

it is hereby

**ORDERED** that defendant's motion be and is hereby is granted; and it is further

**ORDERED** that plaintiff's motion be and is hereby is denied; and it is further

**ORDERED** that the action is dismissed.


                                    _____
                                    HON. CLAIRE R. KELLY, JUDGE

Dated: _____
        New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, JUDGE

| | | |
|---|---|---|
| KEIRTON USA, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 21-00452 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>DEFENDANT'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS</u>

Pursuant to Rule 12(c) of the Rules of the United States Court of International Trade, defendant respectfully requests that the Court enter judgment for the United States on the pleadings.  The reasons for our motion are set forth in the accompanying memorandum.

WHEREFORE, defendant respectfully requests that an order be entered granting defendant's motion for judgment on the pleadings, dismissing this action, and granting defendant such other and further relief as may be just and appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Guy Eddon
GUY EDDON
LUKE MATHERS
Trial Attorneys
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Alexandra Khrebtukova
Mathias Rabinovitch
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

March 28, 2022

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| KEIRTON USA, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |
| | : |

Court No. 21-00452

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION
FOR JUDGMENT ON THE PLEADINGS AND
IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

AIMEE LEE
Assistant Director

GUY EDDON
LUKE MATHERS
Trial Attorneys
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Alexandra Khrebtukova
Mathias Rabinovitch
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION .......................................................................................................................... 1

QUESTION PRESENTED .............................................................................................................. 2

BACKGROUND ............................................................................................................................. 2

    I.    Administrative History of the Entry ........................................................................... 2

    II.    Legal Framework Governing the Importation of Drug Paraphernalia................................. 3

    III.    CBP's Enforcement of the Prohibition Against Importation of Drug Paraphernalia
in 21 U.S.C. § 863(a)(3) ............................................................................................... 5

SUMMARY OF THE ARGUMENT ............................................................................................. 7

ARGUMENT ................................................................................................................................... 8

    I.    Standard of Review....................................................................................................... 8

    II.    Keirton's Merchandise is Drug Paraphernalia ....................................................... 9

    III.    Keirton May Not Import Drug Paraphernalia ............................................................. 10

        A.    The Plain Language of 21 U.S.C. § 863(f)(1) Requires Authorization—a Specific
Empowerment to Act ............................................................................................ 11

        B.    Keirton's Reading of 21 U.S.C. § 863(f)(1) Violates the Principle that Exemptions
are not Liberally Construed................................................................................. 18

        C.    Keirton's Interpretation Conflicts with the Overarching Purpose of the Controlled
Substances Act .................................................................................................... 21

        D.    Keirton's Statutory Interpretation is Unpersuasive. ........................................... 22

CONCLUSION................................................................................................................................ 25

# **TABLE OF AUTHORITIES**

## Cases

*Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249 (9th Cir. 2022) ............. 21

*Am. Tel. & Tel. Co. v. Cent. Off. Tel., Inc.*, 524 U.S. 214 (1998) .................................................. 13

*Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507 (2019) ........................ 13

*Connecticut Nat. Bank v. Germain*, 503 U.S. 249 (1992) ............................................................. 11

*Dep't of Interior v. Klamath Water User Protective Ass'n*, 532 U.S. 1 (2001) ............................ 20

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) ........................................................................ 14

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) ............................................. 21

*FYH Bearings Units USA v. United States*, 753 F. Supp. 2d 1348 (Ct. Int'l Trade 2011) ......... 8, 9

*Gonzales v. Raich*, 545 U.S. 1 (2005) ..................................................................................... 20, 21

*Hamrick v. Partsfleet, LLC*, 1 F.4th 1337 (11th Cir. 2021) ..................................................... 19, 20

*Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971 (9th Cir. 1999) ....................................... 9

*In re Mehta*, 310 F.3d 308 (3d Cir. 2002) .................................................................................... 19

*Mellouli v. Lynch*, 575 U.S. 798 (2015) ........................................................................................ 12

*Milner v. Dep't of Navy*, 562 U.S. 562 (2011) .............................................................................. 20

*Murphy v. NCAA*, 138 S. Ct. 1461 (2018) .............................................................................. 16, 17

*Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513 (1994) ................................................ 9, 13

*Ratzlaf v. United States*, 510 U.S. 135 (1994) .............................................................................. 13

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) ........................................................................... 11

*Stinson Est. v. United States*, 214 F.3d 846 (7th Cir. 2000) ................................................... 19, 20

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) .................................................................................... 19

*United Sav. Ass'n of Tex. v. Timbers of Inland Forest Assoc.*, 484 U.S. 365 (1988) ................... 21

*United States v. Assorted Drug Paraphernalia Valued at $29,627.07*, Civ. No. 18-143-GJF/SMV, 2018 WL 6630524 (D.N.M. Dec. 19, 2018) .......................................................... 23

*United States v. Inn Foods, Inc.*, 264 F. Supp. 2d 1333 (Ct. Int'l Trade 2003) ............................ 8

*United States v. Murray*, 618 F.2d 892 (2d Cir. 1980) ................................................................ 21

**Statutes**

19 U.S.C. § 1595a(c)(2) ............................................................................................................ 6, 7

19 U.S.C. § 1595a(c)(2)(A) ............................................................................................................ 1

19 U.S.C. § 1595a(c)(5) .................................................................................................................. 7

19 U.S.C. § 1595a(c)(5)(B) ............................................................................................................ 6

21 U.S.C. § 801 .............................................................................................................................. 6

21 U.S.C. § 822(b) ........................................................................................................................ 15

21 U.S.C. § 844(a) ........................................................................................................................ 14

21 U.S.C. § 857 .............................................................................................................................. 4

21 U.S.C. § 863 .............................................................................................................................. 6

21 U.S.C. § 863(a) ...................................................................................................................... 1, 3

21 U.S.C. § 863(a)(3) ................................................................................................. 1, 6, 10, 21

21 U.S.C. § 863(c) ........................................................................................................................ 13

21 U.S.C. § 863(d) .......................................................................................................................... 9

21 U.S.C. § 863(e) .......................................................................................................................... 9

21 U.S.C. § 863(f) .......................................................................................................................... 3

21 U.S.C. § 863(f)(1) ............................................................................................................. passim

21 U.S.C. § 863(f)(2) ................................................................................................................. 5, 23

21 U.S.C. § 872(e) ........................................................................................................................ 14

28 U.S.C. § 3702 .......................................................................................................................... 17

Anti-Drug Abuse Act of 1986, Pub. L. 99-570 (Oct. 27, 1986) ................................................... 4

Crime Control Act of 1990, Pub. L. 101-647 (Nov. 29, 1990)........................................................ 4

RCW 69.50.412 ......................................................................................................................... 15

**Rules**

USCIT Rule 12(c) ....................................................................................................................... 1

**Regulations**

19 C.F.R. § 151.16(j) ............................................................................................................... 1, 7

19 C.F.R. § 177.9(c)................................................................................................................. 22

Wash. Admin. Code § 314-55-010 ......................................................................................... 10

Wash. Admin. Code § 314-55-079 ......................................................................................... 16

**Other Authorities**

AUTHORIZE, *Black's Law Dictionary* (6th ed. 1990) ............................................................ 11, 17

AUTHORIZED, *Merriam-Webster Dictionary*, available at
  https://www.merriam-webster.com/dictionary/authorized ...................................................... 11

AUTHORIZED, *Oxford English Dictionary* (2d ed. 1989), available at
  https://www.oed.com/oed2/00015076...................................................................................... 11

AUTHORIZED, *Oxford English Dictionary Online*, available at
  www.oed.com/view/Entry/13353 ......................................................................................... 11, 18

Breanna C. Phillips, *The Authorization Continuum: Investigating the Meaning of
  "Authorization" Through the Lens of the Controlled Substances Act*,
  72 VAND. L. REV. 1335 (2019)................................................................................................ 12

EXEMPTION, *Black's Law Dictionary* (6th ed. 1990) .................................................................. 18

EXEMPTION, *Legal Information Institute, Cornell Law School*, available at
  https://www.law.cornell.edu/wex/exemption).......................................................................... 18

Hearing Before the Subcommittee on Crime of the Committee on the Judiciary House of
  Representatives, Ninety-Ninth Congress, Second Session on H.R. 1625 ............................ 5, 21

USITC Publication, September 1989, Importation of Certain Drug Paraphernalia Into the
  United States, Report on the Committee on Finance, U.S. Senate, on Investigation No.
  332-277 Under Section 332 of the Tariff Act of 1930 ............................................................... 4

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, JUDGE

_____
KEIRTON USA, INC.                             :
                                              :
                         Plaintiff,           :
                                              :      Court No. 21-00452
                 v.                           :
                                              :
UNITED STATES,                                :
                                              :
                         Defendant.           :
_____       :

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION
FOR JUDGMENT ON THE PLEADINGS AND
IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

    Defendant, the United States, submits this memorandum in support of its cross-motion for judgment on the pleadings pursuant to USCIT Rule 12(c) and in opposition to plaintiff's motion for judgment on the pleadings.

## INTRODUCTION

    Federal statutory law bars the importation of drug paraphernalia into the United States. *See* 21 U.S.C. § 863(a).[1]  Where drug paraphernalia is introduced or attempted to be introduced into the United States contrary to the prohibition in 21 U.S.C. § 863(a), U.S. Customs and Border Protection (CBP) may seize it, or exclude it from entry, because the prohibition is imposed by a law relating to health and safety, and the drug paraphernalia does not comply with that law. *See* 21 U.S.C. § 863(a)(3); 19 U.S.C. § 1595a(c)(2)(A); and 19 C.F.R. § 151.16(j).

    Keirton USA, Inc. (Keirton) attempted to import marijuana-related drug paraphernalia, seeking to avoid this prohibition based on 21 U.S.C. § 863(f)(1), which provides a limited

_____

[1]  21 U.S.C. § 863(a) provides that it is unlawful for any person: "(1) to sell or offer for sale drug paraphernalia; (2) to use the mails or any other facility of interstate commerce to transport drug paraphernalia; or (3) to import or export drug paraphernalia."

exemption where a person is "authorized by local, State, or Federal law to manufacture, possess, or distribute such items."  Keirton argues that it received such authorization as a result of a Washington state law that merely removes the threat of prosecution for marijuana-related drug paraphernalia.  But that law does not "authorize" Keirton to manufacture, possess, or distribute marijuana-related drug paraphernalia.  For a person to be "authorized by local, State, or Federal law" requires a specific empowerment to act, which Keirton lacks.  If the mere absence of a criminal sanction were sufficient to constitute "authorization," then the absence of a Federal law prohibiting the possession of drug paraphernalia would trigger the exception nationwide and negate the prohibition.  The text of the Controlled Substances Act, along with its clear purpose, further bolsters the conclusion that the required "authorization" must be affirmative and specific.  Thus, Keirton's argument fails as a matter of law, and the Government is entitled to judgment on the pleadings.

## QUESTION PRESENTED

Whether CBP may exclude the subject merchandise, which Keirton stipulates is "drug paraphernalia" as defined by 21 U.S.C. § 863(d), from the customs territory of the United States pursuant to its authority under 19 U.S.C. § 1595a(c)(2) and 19 C.F.R. § 151.16(j).  Specifically, whether the exemption in 21 U.S.C. § 863(f)(1), for "any person authorized by local, state, or Federal law to manufacture, possess, or distribute such items," is satisfied by a Washington state law that merely provides that a person selling or delivering marijuana paraphernalia in that state is no longer committing a misdemeanor or a civil infraction.

## BACKGROUND

### I.    Administrative History of the Entry

This action covers one entry, Entry No. SQ4-03475065, of drug paraphernalia attempted to be entered through the Port of Seattle, Washington, and detained by CBP on March 24, 2021.

The complaint describes the drug paraphernalia at issue as "parts that Keirton was importing …
to assemble its Twister Trimmer product."  Compl. ¶ 6.  The Twister Trimmer is an "agricultural
harvesting machine, which is used to trim, harvest, and vacuum up the cuttings from hemp, kale,
hops, and cannabis."  Compl. Ex. B at 2.

On April 23, 2021, the merchandise was deemed excluded from entry pursuant to 19
U.S.C. § 1499(c)(5)(A).  Keirton filed Protest No. 3002-21-103719 on June 15, 2021, contesting
the deemed exclusion of its drug paraphernalia in Entry No. SQ4-03475065.  The protest was
then denied by operation of law, pursuant to 19 U.S.C. § 1499(c)(5)(B), on July 15, 2021.
Finally, on August 19, 2021, Keirton timely filed the summons and complaint in this case to
contest the denial of Protest No. 3002-21-103719.  Jurisdiction is proper pursuant to 28 U.S.C.
§ 1581(a).

## II.    Legal Framework Governing the Importation of Drug Paraphernalia

The relevant statute provides that, with respect to any item, equipment, product, or
material of any kind that meets the definition of "drug paraphernalia" in 21 U.S.C. § 863(d), "[i]t
is unlawful for any person — (1) to sell or offer for sale drug paraphernalia; (2) to use the mails
or any other facility of interstate commerce to transport drug paraphernalia; or (3) to import or
export drug paraphernalia."  21 U.S.C. § 863(a).

Per the exemptions in subsection (f), however, "[t]his section shall not apply to — (1)
any person authorized by local, State, or Federal law to manufacture, possess, or distribute such
items; or (2) any item that, in the normal lawful course of business, is imported, exported,
transported, or sold through the mail or by any other means, and traditionally intended for use
with tobacco products, including any pipe, paper, or accessory."

These statutory provisions date back to the Anti-Drug Abuse Act of 1986, Pub. L. 99-570
(Oct. 27, 1986), which included, in Title I (Anti-Drug Enforcement), the Mail Order Drug

Paraphernalia Control Act (Subtitle O, Prohibition of the Interstate Sale and Transportation of Drug Paraphernalia), codified in 21 U.S.C. § 857.  Section 2401(d) of Title XXIV of the Crime Control Act of 1990, Pub. L. 101-647 (Nov. 29, 1990), subsequently amended some of the statutory language in 21 U.S.C. § 857, and also transferred section 857 into the Controlled Substances Act, recodifying the provisions as 21 U.S.C. § 863.  But the relevant language for purposes of this case—*i.e.*, the prohibition in subsection (a)(3) that "[i]t is unlawful for any person … to import or export drug paraphernalia," and the exemption in subsection (f)(1) for "any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items"—dates back to the original section 857 as enacted under the Anti-Drug Abuse Act of 1986.

Before Congress enacted 21 U.S.C. § 857 in 1986, the Federal Government had largely left the regulation and enforcement of drug paraphernalia to the states.  In 1979, the White House commissioned the Drug Enforcement Administration to draft model state legislation—the Model Drug Paraphernalia Act—intended to be adopted by states to uniformly ban the manufacture, advertisement, sale, and possession of drug paraphernalia.[2]  But by 1986, it had become clear that, although a majority of the states had enacted the Model Drug Paraphernalia Act,[3] the lack of an overarching Federal prohibition on the sale and transportation of drug paraphernalia continued to present a loophole that could not be addressed at the state level alone.  Thus, in introducing the Mail Order Drug Paraphernalia Control Act, which became 21 U.S.C. § 857, House Representative Levine emphasized that "[it] is only through Federal legislation, such as this that

---

[2]  USITC Publication, September 1989, Importation of Certain Drug Paraphernalia Into the United States, Report on the Committee on Finance, U.S. Senate, on Investigation No. 332-277 Under Section 332 of the Tariff Act of 1930, at 2.

[3]  *See id.* (noting that by December 1987 the Model Act had been adopted by 38 states).

we can close what had become a gaping loophole for the paraphernalia industry in the law,"
whereby paraphernalia dealers who could no longer utilize intrastate commerce simply turned to
interstate commerce.[4]  Title 21, United States Code, section 857 (now 21 U.S.C. § 863) filled this
gap by providing for a uniformly applicable Federal prohibition against the sale or offering for
sale of drug paraphernalia, against using the mail or any other facility of interstate commerce to
transport drug paraphernalia, and against importing or exporting drug paraphernalia.

There are only two limited exceptions to section 863(a)'s broad proscription.  First, it
does not apply to "any person authorized by local, State, or Federal law to manufacture, possess,
or distribute such items."  21 U.S.C. § 863(f)(1).  Second, it does not apply to "any item that, in
the normal lawful course of business, is imported, exported, transported, or sold through the mail
or by any other means, and traditionally intended for use with tobacco products, including any
pipe, paper, or accessory."  *Id.* § 863(f)(2).

### III.  CBP's Enforcement of the Prohibition Against Importation of Drug Paraphernalia in 21 U.S.C. § 863(a)(3)

CBP enforces section 863 as a law relating to health and safety[5] under the Controlled
Substances Act, which prohibits, among other things, the introduction of drug paraphernalia into
the United States by means of importation. 21 U.S.C. § 863(a)(3); 21 U.S.C. §§ 801 *et seq.*

---

[4]  *See* Hearing Before the Subcommittee on Crime of the Committee on the Judiciary
House of Representatives, Ninety-Ninth Congress, Second Session on H.R. 1625 ("H.R. 1625
Hearing"), testimony of House Rep. Levine, who introduced H.R. 1625, known as the Mail
Order Drug Paraphernalia Control Act (stating that the "problem [is] that paraphernalia dealers
who can no longer utilize intrastate commerce are now turning into interstate commerce.  This
giant loophole in the law can't be handled on the State level, and it necessitates this legislation").

[5]  *See* 21 U.S.C. § 801 ("The Congress makes the following findings and declarations: …
(2) [t]he illegal importation, manufacture, distribution, and possession and improper use of
controlled substances have a substantial and detrimental effect on the health and general welfare
of the American people."); *id.* at § 863 (prohibiting sale, use of mail or other facility of interstate
commerce to transport, and importation and exportation of "drug paraphernalia … which is
primarily intended or designed for use in manufacturing, compounding, converting, concealing,

Section 596(c)(2) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1595a(c)(2), provides that "[m]erchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows: … (2) [t]he merchandise may be seized and forfeited if — (A) its importation or entry is subject to any restriction or prohibition which is imposed by law relating to health, safety, or conservation and the merchandise is not in compliance with the applicable rule, regulation, or statute; …."  But 19 U.S.C. § 1595a(c)(5)(B) also provides that "[i]n any case where the seizure and forfeiture of merchandise are required or authorized by this section, the Secretary may — … (B) permit the exportation of the merchandise, unless its release would adversely affect health, safety, or conservation or be in contravention of a bilateral or multilateral agreement or treaty."  Thus, where release of the merchandise for re-exportation would not adversely affect health, safety, or conservation, or be in contravention of a bilateral or multilateral agreement or treaty, CBP may exclude the merchandise from entry instead of seizing it.  The implementing regulation further clarifies that "[i]n lieu of seizure and forfeiture, where authorized by law, Customs may deny entry and permit the merchandise to be exported, with the importer responsible for paying all expenses of exportation."  19 C.F.R. § 151.16(j).

In sum, the importation of drug paraphernalia is prohibited by a law relating to health and safety, and where drug paraphernalia is attempted to be introduced into the United States contrary to this prohibition, CBP may seize the prohibited merchandise or, in lieu of seizure,

---

producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful under this subchapter").  In addition, the full title for Public Law 91-513 is "An Act to amend the Public Health Service Act and other laws to provide increased research, into, and prevention of, drug abuse and drug dependence; to provide for treatment and rehabilitation of drug abusers and drug dependent persons; and to strengthen existing law enforcement authority in the field of drug abuse."

"deny entry and permit the merchandise to be exported, with the importer responsible for paying all expenses of exportation." 19 C.F.R. § 151.16(j).

## SUMMARY OF THE ARGUMENT

Federal law prohibits the importation of drug paraphernalia into the United States, *see* 21 U.S.C. § 863(a)(3), and CBP may exclude from the customs territory of the United States any drug paraphernalia that is attempted to be introduced into the United States contrary to this prohibition. *See* 19 U.S.C. § 1595a(c)(2) and (5); 19 C.F.R. § 151.16(j).

Keirton contends that the exemption codified at 21 U.S.C. § 863(f)(1), which provides that "[t]his section shall not apply to … any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items," permits it to import drug paraphernalia through a U.S. Port of Entry located in a state where state law has removed the threat of prosecution for possession and distribution of marijuana-related drug paraphernalia.

Keirton's arguments are without merit. Washington law does not "authorize[]"—*i.e.*, specifically empower or formally appoint—Keirton to do anything. If it did—that is, if the mere absence of criminal liability under Washington's laws for marijuana paraphernalia were sufficient to authorize Keirton to "manufacture, possess, or distribute such items"—then the exemption would swallow the whole statute. Since the (f)(1) exemption contemplates authorization under Federal law as well, taking Keirton's argument to its logical conclusion would mean that the mere absence of Federal criminal liability for the possession of drug paraphernalia would constitute authorization for all. Under this interpretation, everyone would be authorized by Federal law to possess drug paraphernalia and accordingly exempt from section 863 because Federal law does not criminalize drug-paraphernalia possession. That cannot be what Congress intended by choosing the term "authorized" when closing a loophole that had

previously allowed the interstate transportation and sale of drug paraphernalia.  Furthermore, Congress used the word "authorized" throughout the Controlled Substances Act to require a specific empowerment to act or formal appointment.  But Keirton lacks such an empowerment. Because Keirton fails to point to any local, state, or Federal law that specifically empowers it to manufacture, possess, or distribute the subject drug paraphernalia, its claims fail as a matter of law, and judgment should be entered for the United States.

## ARGUMENT

### I.   Standard of Review

A USCIT Rule 12(c) motion for judgment on the pleadings "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *United States v. Inn Foods, Inc*., 264 F. Supp. 2d 1333, 1334 (Ct. Int'l Trade 2003) (citations omitted).  A motion for judgment on the pleadings may be granted if the moving party is entitled to judgment as a matter of law.  *Id*. (citing *N.Z. Lamb Co. v. United States*, 40 F.3d 377, 380 (Fed. Cir. 1994)); *see, e.g.*, *FYH Bearings Units USA v. United States*, 753 F. Supp. 2d 1348, 1354 (Ct. Int'l Trade 2011).

The Court reviews a motion for judgment on the pleadings under the same standard as a motion to dismiss under USCIT Rule 12(b) for failure to state a claim.  *FYH Bearings Units USA*, 753 F. Supp. 2d at 1354.  In deciding a motion to dismiss for failure to state a claim, as well as a USCIT Rule 12(c) motion for judgment on the pleadings, the Court accepts all well-pleaded facts as true and views them in the light most favorable to the non-moving party.  *Id*. (citation omitted).  The Court may consider facts that are contained in "materials of which the court may take judicial notice."  *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (quoting *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)).

**II.     Keirton's Merchandise is Drug Paraphernalia**

As Keirton concedes, the subject merchandise is drug paraphernalia under 21 U.S.C.

§ 863(d).  The statute defines the term "drug paraphernalia" as "any equipment, product, or

material of any kind which is primarily intended or designed for use in manufacturing,

compounding, converting, concealing, producing, processing, preparing, injecting, ingesting,

inhaling, or otherwise introducing into the human body a controlled substance, possession of

which is unlawful under this subchapter."  21 U.S.C. § 863(d).  The term "includes items

primarily intended or designed for use in ingesting, inhaling, or otherwise introducing

marijuana," among other substances, "into the human body[.]"  *Id.* (non-exhaustive listing of

examples omitted).  The statute provides factors to consider, among other "logically relevant"

ones, in determining whether an item constitutes drug paraphernalia.  *Id.* § 863(e); *see also*

*Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 522 n.11 (1994) (noting that "[a]mong

the factors that are relevant to whether an item constitutes drug paraphernalia are 'instructions,

oral or written, provided with the item concerning its use,' … and 'the manner in which the item

is displayed for sale'") (citations omitted).

Keirton concedes that the subject merchandise is drug paraphernalia as defined in 21

U.S.C. § 863(d).  Specifically, Keirton stipulates to the following relevant facts:

- Keirton "manufactures agricultural equipment used to process cannabis and other farm goods."  Compl. ¶ 4.

- The subject merchandise comprises parts for a machine designed to be "used in the harvesting of cannabis products, including hemp and marijuana."  Pl. Mem. at 1.

- The subject merchandise "is not traditionally intended for use with tobacco products."  *Id.*

- The subject merchandise "meets the federal statutory definition of 'drug paraphernalia,'" under 21 U.S.C. § 863(d).  *Id.*

Therefore, the subject excluded merchandise is drug paraphernalia as defined by Federal law in 21 U.S.C. § 863(d).[6]

### III.     Keirton May Not Import Drug Paraphernalia

Because the subject merchandise is drug paraphernalia as defined in 21 U.S.C. § 863(d), it is unlawful for Keirton to import such merchandise.  21 U.S.C. § 863(a)(3).  Keirton contends, however, that it is entitled to benefit from an exemption from the prohibition to import drug paraphernalia under subsection 863(f)(1) as a "person authorized by local, State, or Federal law to manufacture, possess, or distribute such items."

Keirton argues that Washington state law—specifically, the Revised Code of Washington (RCW) 69.50.412, included under Part III, Section 22, of Washington I-502, which was passed in November 2012 to overhaul Washington's marijuana laws—authorizes Keirton to manufacture, possess, or distribute the subject parts for its Twister Trimmer, and that therefore Keirton is exempt under subsection (f)(1) because Washington law does not outlaw the possession or distribution of marijuana-related drug paraphernalia.  *See* Pl. Mem. at 11–12; Compl. ¶ 28.  As explained below, Keirton does not satisfy this exemption because Washington state law does not *authorize* Keirton to manufacture, possess, or distribute the subject imported drug paraphernalia within the meaning of Federal law.

---

[6] This is true even though Wash. Admin. Code § 314-55-010 excludes from Washington's definition of paraphernalia "[i]tems for growing, cultivating, and processing marijuana, such as, but not limited to, butane, lights, and chemicals":

> (27) "Paraphernalia" means items used for the storage or use of useable marijuana, marijuana concentrates, or marijuana-infused products, such as, but not limited to, lighters, roach clips, pipes, rolling papers, bongs, and storage containers. Items for growing, cultivating, and processing marijuana, such as, but not limited to, butane, lights, and chemicals are not considered "paraphernalia."

### A. The Plain Language of 21 U.S.C. § 863(f)(1) Requires Authorization—a Specific Empowerment to Act

We begin with the language of the statutory exemption in subsection 863(f)(1).  "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992).  "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'"  *Id.* at 254 (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)).  In construing the language of a statute, the first step is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).

Congress explicitly required that persons be *authorized* by local, state, or Federal law. The common definition of the word "authorized" is "endowed with authority."  Authorized, *Merriam-Webster Dictionary*, available at https://www.merriam-webster.com/dictionary/authorized.  *Black's Law Dictionary* likewise defines "authorize" as "[t]o empower, to give a right or authority to act."  Authorize, *Black's Law Dictionary* (6th ed. 1990).  *See also* Authorized, *Oxford English Dictionary Online*, available at www.oed.com/view/Entry/13353 ("Of a person: that has been given authority; placed in a position of authority; formally appointed to a particular role or duty."); Authorized, *Oxford English Dictionary* (2d ed. 1989), available at https://www.oed.com/oed2/00015076 ("Placed in (*obs.*) or endowed with authority[;] Legally or duly sanctioned or appointed."); Breanna C. Phillips, *The Authorization Continuum: Investigating the Meaning of "Authorization" Through the Lens of the Controlled Substances Act*, 72 Vand. L. Rev. 1335, 1366 (2019) ("Affirmative authorization occurs when deliberate action is taken to formally approve conduct.  This

11

interpretation of authorization is uncontroversial, and some consider it the term's 'ordinary' meaning.").

In the context of the Controlled Substances Act, of which section 863 is now part, "authorization" requires that the law endow a person with authority or empowerment to "manufacture, possess, or distribute such items."  Authorization in this context means more than just the absence of particular criminal or civil sanctions but, rather, requires deliberate, affirmative approval for an individual or entity to "manufacture, possess, or distribute such items."  Had Congress instead intended to permit the importation of drug paraphernalia simply where a state or locality has altered the criminal consequence of the manufacture, distribution, or possession of such items, it would have said so.

Section 863(a) specifically proscribes selling, transporting through interstate commerce, and importing or exporting drug paraphernalia.  Thus, "Federal law criminalizes the sale of or commerce in drug paraphernalia, but possession alone is not criminalized at all."  *Mellouli v. Lynch*, 575 U.S. 798, 803–04 (2015).  Under Keirton's interpretation of "authorized," the fact that Federal law does not prohibit mere possession of drug-paraphernalia—since the inception of the Mail Order Drug Paraphernalia Control Act, 21 U.S.C. § 857, no less—would mean that all persons are "authorized by … Federal law to … possess" drug paraphernalia.  21 U.S.C. § 863(f)(1).[7]  If Keirton were correct, then every person is and has always been exempt from section 863(a)'s prohibitions, and prosecutions like that in *Posters 'N' Things* should never have been brought.  511 U.S. 513 (affirming conviction under former 21 U.S.C. § 857).  Unlike

---

[7] The word "authorized" should carry the same meaning whether local, state, or Federal law is involved.  *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1512 (2019) ("In all but the most unusual situations, a single use of a statutory phrase must have a fixed meaning."); *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) ("We have even stronger cause to construe a *single* formulation … the same way each time it is called into play.").

Keirton's reading, our interpretation does not effectively nullify section 863.  *See, e.g.*, *Am. Tel. & Tel. Co. v. Cent. Off. Tel., Inc.*, 524 U.S. 214, 228 (1998) (a law "cannot be held to destroy itself") (quotation omitted).

Further supporting our reading is the example that Congress itself gave in section 863(c) of what it meant by "authorized" in section 863.  In subsection (c), Congress provided that "the Administrator of General Services, General Services Administration," may "authorize" the use of seized and forfeited drug paraphernalia "for law enforcement or educational purposes by Federal, State, or local authorities."  This statutory authorization exemplifies a specific empowerment to act.  It requires a particular official (the Administrator of General Services) to affirmatively empower certain persons to do something, that is, define both who is authorized (Federal, state, or local authorities) and the scope of the authorization (use for law enforcement or educational purposes).  And it reflects a limited exception to liability rather than a broad one that renders section 863's prohibitions toothless.

Keirton's interpretation, by contrast, does just that—nullify section 863.  A hypothetical local law that purports to authorize all persons in the United States to possess drug paraphernalia would, under Keirton's understanding, allow the subsection (f)(1) exemption to swallow the entirety of section 863.  Such a reading would undermine the nationally uniform scheme that Congress created in section 863 through a few words in an ancillary provision.  But "Congress does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626–27 (2018) (quotation omitted).

Other aspects of the Controlled Substances Act support our position of what it means to be authorized.  Whether possession of a controlled substance constitutes a crime, for instance,

depends on whether possession is properly authorized: "It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice, or except as otherwise *authorized* by this subchapter or subchapter II."  21 U.S.C. § 844(a) (emphasis added).  Section 844(a) itself thus gives one example of authorization: "a valid prescription or order" from a practitioner.  And much like section 863(c), a prescription from a doctor explicitly empowers a patient to do something that is otherwise unlawful, namely, possess a particular controlled substance for a valid medical purpose.

Similarly, under the controlled substances research exemption found at 21 U.S.C. § 872(e), the Attorney General "may authorize the possession, distribution, and dispensing of controlled substances by persons engaged in research.  Persons who obtain this authorization shall be exempt from State or Federal prosecution for possession, distribution, and dispensing of controlled substances to the extent authorized by the Attorney General."[8]  Again, like section 863(c), authorization under section 872(e) entails an affirmative empowerment to act; indeed, one must "obtain" it.  *See also* 21 U.S.C. § 822(b) (providing that "authoriz[ation] … to manufacture, distribute, or dispense controlled substances" is contingent on, and limited by, the terms of, a person's formal "registration" with the Attorney General).  The plain meaning of "authorized" in the Controlled Substances Act, including in section 863(f)(1), thus contemplates a specific empowerment to act or formal dispensation specific to a person.

---

[8] The Controlled Substances Act distinguishes between controlled substances (drugs) and drug paraphernalia, criminalizing the simple possession of the former but not the latter. However, notwithstanding the difference in legislative judgment, Congress' consistent use of the word "authorize" throughout the Act, including in provisions that prohibit drug possession, supports our interpretation of section 863(f)(1).

Keirton's argument that it is "authorized" for purposes of section 863 by a Washington state law that merely removes the threat of prosecution under state law for marijuana-related drug paraphernalia is thus contrary to the plain language of section 863.  Specifically, Washington law RCW 69.50.412[9] provides, in pertinent part (emphasis added):

> (1) It is unlawful for any person to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance *other than marijuana*. Any person who violates this subsection is guilty of a misdemeanor.

> (2) It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance *other than marijuana*. Any person who violates this subsection is guilty of a misdemeanor.

Thus, Washington law merely removes the threat of prosecution with respect to marijuana-related drug paraphernalia under state law.  But Washington's removal of the threat of prosecution is not authorization.  A removal of the sanction for certain conduct is not the equivalent of an affirmative grant of authority to engage in the act for the purpose of satisfying the conditions of the exemption found at subsection 863(f)(1).

Washington still requires compliance with its law and regulations that limit and define a person's rights and responsibilities with regard to marijuana-related drug paraphernalia.  To that end, Washington established the Washington State Liquor and Cannabis Board and created a

---

[9]  Effective May 13, 2021, after the date of the entry at issue here, the text of RCW 69.50.412 changed in ways that are not material to the legal question here.  *See* RCW 69.50.412, effective May 13, 2021.  Effective June 9, 2022, Washington will replace the word "marijuana" in the statute with the word "cannabis." http://lawfilesext.leg.wa.gov/biennium/2021-22/Pdf/Bills/Session%20Laws/House/1210-S2.SL.pdf.

licensing system to oversee and regulate activities related to marijuana and marijuana paraphernalia.  As part of its licensing regime, Washington has created a "marijuana retailer license," which "allows the licensee to sell only useable marijuana, marijuana concentrates, marijuana-infused products, *marijuana paraphernalia*, and lockable boxes to store marijuana at retail in licensed retail outlets …."  Wash. Admin. Code § 314-55-079 (emphasis added).  If Washington's law constituted the type of blanket authorization to possess, manufacture, and distribute marijuana paraphernalia that Keirton suggests, then Washington would have had no need to create a licensing regime specifically regulating the sale of marijuana-related drug paraphernalia.  And Keirton does not allege that it possesses any Washington license.  Accordingly, no Washington law authorizes Keirton to manufacture, possess, or distribute anything and it thus lacks authorization for purposes of the subsection (f)(1) exemption.  And in any event, as discussed above, the plain language of the statutory exemption confirms that merely removing the possibility of prosecution under state law does not constitute authorization.

Although Keirton does not cite the Supreme Court's decision in *Murphy v. NCAA*, 138 S. Ct. 1461 (2018), we note that the Court's interpretation of the word "authorize" in that case does not militate against the Government's reading of this requirement in section 863(f)(1).   In *Murphy*, a Federal law purported to make it "'unlawful' for a state or any of its subdivisions 'to sponsor, operate, advertise, promote, license, or authorize by law or compact … a lottery, sweepstakes, or other betting, gambling, or wagering scheme based … on' competitive sporting events."  *Id.* at 1470 (quoting 28 U.S.C. § 3702).  The *Murphy* Court found that a state's act of repealing laws banning sports gambling amounted to an authorization of that activity.  *Id.* at 1474.

There are important differences, however, between 28 U.S.C. § 3702, the statute at issue in *Murphy*, and subsection 863(f)(1).  First, the two statutes serve opposite purposes. Section 3702 purported to ban governmental action—it made it "unlawful" for states to "authorize by law" any sports gambling.  Here, by contrast, 21 U.S.C. § 863(f)(1) provides an exemption from a Federal ban on the importation of drug paraphernalia.  *Murphy*'s interpretation of authorization as including repeal of a prohibition on an activity makes sense when it appears as part of the description of the activity being banned, but a different understanding is appropriate when "authorization" is used in an *exemption* for otherwise prohibited conduct.  A ban seeks to broadly prohibit an activity, which requires a similarly broad understanding of an authorization that would violate that ban (*e.g.*, a state law permitting sports gambling through a repeal).  An exemption instead endows a person with authority to engage in conduct that would otherwise violate a prohibition, which warrants a narrow reading of an authorization triggering the exemption.

Second, each statute's language is materially different.  To begin, section 863(f)(1) refers to an authorized *person*, while 28 U.S.C. § 3702 refers to an authorized *activity*.  "[A]uthorized" in the context of section 863(f)(1) must therefore be given its primary plain meaning—"To empower, to give a right or authority to act," AUTHORIZE, *Black's Law Dictionary* (6th ed. 1990); "Of a person: that has been given authority; placed in a position of authority; formally appointed to a particular role or duty," AUTHORIZED, *Oxford English Dictionary Online*, available at www.oed.com/view/Entry/13353—rather than the secondary meaning ("permit") that *Murphy* applied to the more broadly phrased 28 U.S.C. § 3702.

Further, as discussed above, because subsection (f)(1) operates as an exemption, if it were interpreted in the way that Keirton suggests, it would swallow the prohibition and render

section 863(a) nugatory.  And Congress consistently used the word "authorized" throughout the

Controlled Substances Act to mean a specific empowerment to act or formal appointment.  Thus,

there is ample reason to conclude that Congress did not intend the meaning of authorization in 28

U.S.C. § 3702 to carry the same meaning in 21 U.S.C. § 863(f)(1)—a very differently worded

statutory provision in a separate Title of the U.S. Code.  In sum, under a plain reading of section

863(f)(1), Keirton is not "authorized" by any local, state or Federal law to manufacture, possess

or distribute the subject drug paraphernalia, and is thus not exempt from section 863(a)(3).

### B.  Keirton's Reading of 21 U.S.C. § 863(f)(1) Violates the Principle that Exemptions are not Liberally Construed

Further supporting the Government's plain reading of subsection (f)(1) is the general

principle that exemptions are not to be liberally construed.  An exemption "is an immunity,

exception or freedom from the liability, duty, or other requirements, such as exemptions from

taxation or execution for certain property, or exemptions from military conscription."

EXEMPTION, *Legal Information Institute, Cornell Law School*, available at

https://www.law.cornell.edu/wex/exemption); *see also* EXEMPTION, *Black's Law Dictionary* (6th

ed. 1990) ("[F]reedom from a general duty or service; immunity from a general burden, tax, or

charge.").  The exemption in the Federal statute at issue here provides immunity from the

criminal prohibition on the sale, interstate transportation, and importation or exportation of drug

paraphernalia.

In providing this exemption, Congress allowed Federal, state, or local law to exempt a

person from this prohibition by affirmatively empowering that person to "manufacture, possess,

or distribute such items," the sale, interstate transportation, and importation or exportation of

which is prohibited.  A Federal, state or local law granting authorization under the exemption

must be clear, express, and, again, affirmative, because that law is granting that authorized

person a unique privilege to engage in otherwise Federally prohibited activity.

"Where Congress explicitly enumerates certain exceptions to a general prohibition,

additional exceptions are not to be implied, in the absence of evidence of a contrary legislative

intent." *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) (quotation omitted).  Accordingly, unless

Congress intends for exemptions to be broad, exemptions may not be construed liberally.

*Compare Stinson Est. v. United States*, 214 F.3d 846, 848 (7th Cir. 2000) (Internal Revenue

Code exemptions "are matters of legislative grace" that are narrowly rather than liberally

construed), *and Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1349 (11th Cir. 2021) ("The Federal

Arbitration Act … has a 'pro-arbitration' purpose, requiring us to give the section one

transportation worker exemption 'a narrow construction.'") (quoting *Circuit City Stores, Inc. v.

Adams*, 532 U.S. 105, 115 (2001)), *with In re Mehta*, 310 F.3d 308, 311 (3d Cir. 2002)

("[B]ecause of bankruptcy's underlying concern for affording a new beginning, statutory

exceptions to discharge are generally construed 'narrowly against the creditor and in favor of the

debtor.'") (quotation omitted).  Keirton can point to no pro-drug-paraphernalia purpose

embodied in the Controlled Substances Act—there is none—so the subsection (f)(1) exemption

cannot be liberally construed to encompass Keirton's broad understanding of the word

"authorized."

Courts have gone even further where, as here, statutory purpose weighs in favor of

strictly construing exemptions.  In the Freedom of Information Act context, the Supreme Court

has held that exemptions "must be narrowly construed."  *Milner v. Dep't of Navy*, 562 U.S. 562,

565 (2011) (internal quotations omitted).  The Court noted there that "[t]he statute's purpose

reinforces this understanding of the exemption," and explained that because of the "Act's goal of

broad disclosure," its "exemptions must be given a narrow compass."  *Id.* at 571 (internal quotation omitted); *see also Dep't of Interior v. Klamath Water User Protective Ass'n*, 532 U.S. 1, 8 (2001) ("[D]isclosure, not secrecy, is the dominant objective of the Act[.]") (quotation omitted).  And as noted, courts have likewise held narrow constructions of exemptions are required in the context of the Internal Revenue Code and the Federal Arbitration Act, each of which embodies policies that broad exemptions would undermine rather than promote.  *See Stinson Est.*, 214 F.3d at 848; *Hamrick*, 1 F.4th at 1349.

Here, section 863's dominant objective is to impose a uniform Federal prohibition on the sale, interstate transportation, and distribution of drug paraphernalia, including through importation, and, therefore, its exemptions ought to be narrowly construed to effectuate the Controlled Substances Act's overarching purpose.  *See Gonzales v. Raich*, 545 U.S. 1, 13–14 (2005) ("Congress devised a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA. … The CSA and its implementing regulations set forth strict requirements regarding registration, labeling and packaging, production quotas, drug security, and recordkeeping.").  Tellingly, courts often describe other exemptions under the Controlled Substances Act as "narrow."  *See, e.g.*, *Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1261 (9th Cir. 2022) (noting that "the CSA's criminalization of psilocybin use" is "subject to narrow exemptions"); *United States v. Murray*, 618 F.2d 892, 901 (2d Cir. 1980) (detailing the "narrow exemptions or exceptions to the Comprehensive Drug Abuse Prevention and Control Act of 1970").  Subsection (f)(1) is no different.  It too should receive a narrow construction to promote

the "closed regulatory scheme" with "strict requirements" that Congress devised in the

Controlled Substances Act to deal with illegal drug use.  *Raich*, 545 U.S. at 13–14.

### C.  Keirton's Interpretation Conflicts with the Overarching Purpose of the Controlled Substances Act

Keirton's interpretation of the exemption in section 863(f)(1) also contravenes the

Controlled Substances Act's overarching purpose.  It is a "fundamental canon of statutory

construction that the words of a statute must be read in their context and with a view to their

place in the overall statutory scheme."  *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S.

120, 133 (2000)); *see also United Sav. Ass'n of Tex. v. Timbers of Inland Forest Assoc.*, 484 U.S.

365, 371 (1988) ("Statutory construction … is a holistic endeavor.").  "A court must therefore

interpret the statute as a symmetrical and coherent regulatory scheme and fit, if possible, all parts

into an harmonious whole."  *Brown & Williamson Tobacco Corp.*, 529 U.S. at 133 (internal

citations and quotations omitted).

Here, as discussed above, the overarching purpose of the Federal statute was to create a

uniformly applicable Federal prohibition against the sale or offering for sale of drug

paraphernalia, using the mail or any other facility of interstate commerce to transport drug

paraphernalia, or importing or exporting drug paraphernalia.  *See* H.R. 1625 Hearing, *supra*

note 3; 21 U.S.C. § 863(a)(3); *see also Raich*, 545 U.S. at 19 ("a primary purpose of the CSA is

to control[,]" on a nationally uniform basis, "the supply and demand of controlled substances in

both lawful and unlawful drug markets").  The law sought to close "a gaping loophole" whereby

the prohibition of drug paraphernalia in one state was easily overcome by the lack of such

prohibition in other states.  The prohibition on importing and exporting is part of the broader

overarching prohibitions in subsection (a) intended to impose Federal uniformity.  Keirton's

broad interpretation of subsection (f)(1) would exempt from this Federal prohibition all persons

who import through a U.S. Port of Entry that is located in a state that has merely removed the threat of prosecution from the manufacture, possession, or distribution of drug paraphernalia under state law. Such a reading of the statute essentially recreates the very loophole that Congress intended to close and runs contrary to Congress' intent to create national uniformity with regard to drug paraphernalia.

### D. Keirton's Statutory Interpretation is Unpersuasive

Keirton argues that it is a "person" qualifying for the subsection (f)(1) exemption, and that a CBP ruling interpreting the exemption would render the words "local" and "State" law superfluous. Pl. Mem. at 10–14. Neither of these arguments, however, addresses how this Court should interpret the statutory term "authorized," which, for the reasons discussed, is not satisfied by a state law removing the threat of prosecution for marijuana-related drug paraphernalia.

To begin, CBP's brief analysis of subsection (f)(1) set forth in HQ H306125 (Aug. 5, 2020), issued to a different importer and concerning different merchandise (described as "a desktop vaporizing device"), neither renders the statutory terms "local" and "State" superfluous nor is applicable or relevant with respect to the different material facts at issue concerning Keirton's subject imported drug paraphernalia in this case.[10] That ruling largely addressed whether particular merchandise constituted drug paraphernalia and whether the merchandise could be imported into Georgia, a state that still outlaws marijuana. The ruling did not interpret the word "authorized," but merely "decline[d] to interpret 21 U.S.C. § 863(f)(1)" in such a way that "the fact that cannabis possession is legal under the state laws of California, Washington, and other states" would be sufficient to exempt all importers, including importers importing

---

[10]   Under CBP regulations, persons other than those to whom specific rulings are addressed, with respect to specific contemplated transactions, are warned not to rely on such rulings or assume that the principles of any particular ruling will be applied in connection with any other transaction. *See* 19 C.F.R. § 177.9(c).

through a Port of Entry in Georgia, where cannabis is still illegal, from the Federal prohibition in

section 863(a)(3).  HQ H306125 is thus of little import here.  Rather, the plain language of

subsection (f)(1)—together with its statutory context, section 863's legislative history, and the

overarching purpose of section 863 and the Controlled Substances Act—shows that Keirton is

not "authorized" within the meaning of subsection (f)(1).

Keirton's "person" argument is also beside the point.  For context, the exemption at issue

here directs that "[t]his section shall not apply to … *any person* authorized by local, State, or

Federal law to manufacture, possess, or distribute such items."  21 U.S.C. § 863(f)(1) (emphasis

added).  By contrast, the second subsection exempts "*any item* … traditionally intended for use

with tobacco products."  21 U.S.C. § 863(f)(2) (emphasis added).  Following the plain meaning

of the text, subsection (f)(2) exempts an entire category of *items*, while subsection (f)(1),

implicated here, applies to a *person*.[11]  Therefore, the plain language of the exemptions

distinguishes between "any person" and "any items."

Keirton acknowledges that the exemption found at subsection (f)(1) applies to persons,

and thus argues that it is a corporate "person" for purposes of section 863.  Pl. Mem. at 10–11.

The Government does not dispute that Keirton is a corporate "person" for purposes of

section 863.  At no point, however, does any Washington law affirmatively empower Keirton to

manufacture, possess, or distribute drug paraphernalia.  Keirton's argument to the contrary

merely states as a *fait accompli* that it is authorized by Washington law, but for the reasons

---

[11]  *See United States v. Assorted Drug Paraphernalia Valued at $29,627.07*, Civ. No. 18-143-GJF/SMV, 2018 WL 6630524, at *8 (D.N.M. Dec. 19, 2018) ("Congress intended to shield from prosecution those persons who were 'authorized by [law] to manufacture, possess, or distribute [drug paraphernalia],' but did not intend to also shield the drug paraphernalia itself from lawful forfeiture.  That balance was within Congress's purview to strike.").

discussed, RCW 69.50.412 does not provide the requisite authorization required to satisfy section 863(f)(1).[12]

In sum, Congress did not intend 21 U.S.C. § 863(f)(1) to apply where a state has merely chosen not to prosecute the manufacture, possession or distribution of drug paraphernalia under that state's criminal or civil laws. Such an interpretation would allow the exception to swallow the rule, and impermissibly impair and frustrate the achievement of Federal uniformity in an area where Federal uniformity is essential.

---

[12] Keirton fails to articulate the precise scope of the "authorization" that Washington state law, RCW 69.50.412, supposedly provides. For example, it is unclear whether Keirton argues that the Washington law covering marijuana paraphernalia provides authority only for all Washington residents to import merchandise that would be otherwise inadmissible, or whether Keirton believes that RCW 69.50.412 represents carte blanche authorization to all importers importing through ports in Washington. Either interpretation is inconsistent with the plain language of subsection (f)(1), and would raise a number of legal and operational concerns for CBP. Because Keirton is not authorized to import drug paraphernalia under the plain language of the statute, this brief does not exhaustively identify the full range of potential impacts of such interpretations.

## CONCLUSION

For these reasons, we respectfully request that the Court enter judgment for the United States and dismiss this action.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Guy Eddon
GUY EDDON
LUKE MATHERS
Trial Attorneys
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Alexandra Khrebtukova
Mathias Rabinovitch
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

March 28, 2022

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, JUDGE

_____

KEIRTON USA, INC.                              :
                                               :
                          Plaintiff,           :
                                               :        Court No. 21-00452
                    v.                         :
                                               :
UNITED STATES,                                 :
                                               :
                          Defendant.           :
_____           :

## **CERTIFICATE OF COMPLIANCE**

I, Guy Eddon, an attorney in the Office of the Assistant Attorney General, Civil Division,

Commercial Litigation Branch, International Trade Field Office, who is responsible for the

Government's memorandum, dated March 28, 2022, relying upon the word count feature of the

word processing program used to prepare the memorandum, certify that this memorandum

complies with the word count limitation under the Court's chambers procedures, and contains

7,343 words.

/s/ Guy Eddon