## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: HONORABLE CLAIRE R. KELLY**

---------------------------------------------------------------- X

|  |  |
|---|---|
| **KEIRTON USA, INC., a Washington Corporation,** | Case No.: 1:21-cv-00452-CRK |
| **Plaintiff,** | RESPONSE IN OPPOSITION TO DEFENDANT'S CROSS MOTION |
| **vs.** | FOR JUDGMENT ON THE PLEADINGS AND REPLY IN |
| **U.S. CUSTOMS AND BORDER PROTECTION, a federal agency,** | SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS |
| **Defendant.** | |

---------------------------------------------------------------- X

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S CROSS MOTION FOR JUDGMENT ON THE PLEADINGS AND REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

DATED:  May 2, 2022

BUCHALTER
A Professional Corporation


By: *s/ Bradley P. Thoreson*
Bradley P. Thoreson, WSBA #18190
bthoreson@buchalter.com
Ann Y. Gong, WSBA #50864
agong@buchalter.com

1420 Fifth Avenue, Suite 3100
Seattle, WA 98101-1337
206-319-7052

*Attorneys for Plaintiff Keirton USA, Inc.*

## **TABLE OF CONTENTS**

**PAGE(S)**

ARGUMENT..................................................................................................................... 1

I.   Washington State Legalized Marijuana and Marijuana "Drug Paraphernalia" Such
     that the Manufacture, Possession, and Distribution of Keirton's Merchandise is
     Authorized Pursuant to Washington State Laws and Regulations. ......................... 1

     A.   Initiative 502 *Legalized* Marijuana and Marijuana "Drug Paraphernalia." ................ 3

          1.   Courts Agree That Initiative 502 *Legalized* Marijuana and Marijuana
               "Drug Paraphernalia." ................................................................... 3

          2.   Legal Scholars Agree That Initiative 502 *Legalized* Marijuana and
               Marijuana "Drug Paraphernalia." ................................................... 6

          3.   The Washington State Liquor and Cannabis Board Agrees That
               Initiative 502 *Legalized* Marijuana and Marijuana "Drug Paraphernalia."..... 7

          4.   CBP Itself, and the Federal Government, Concedes That Washington
               *Legalized* Marijuana and Marijuana "Drug Paraphernalia" in I-502. ............ 8

     B.   Simply Removing The Threat of Prosecution for a Formerly Controlled
          Substance Would Not Involve Robust Taxation of that Substance. .......................... 9

     C.   Processing equipment for marijuana is specifically excluded from the
          Washington State definition of drug paraphernalia, so Keirton does not need a
          marijuana retailer license............................................................... 10

II.  CBP's Conception of the Term "Authorization" as Set Out in 21 U.S.C.
     § 863(f)(1), is Contrary to the United States Supreme Court's Definition of
     "Authorization," and is Otherwise Indefensible. ................................................ 12

     A.   Repeal of a Prohibition is "Authorization" Under 21 U.S.C. § 863(f)(1). ................ 12

     B.   Defendant's Formulation of "Authorization" Violates the Canon of
          Construction Laid Out In 21 U.S.C. § 903. ............................................. 15

     C.   The Government's Argument, if Sustained, Would Infringe Upon the Rights
          of the State of Washington, in Violation of the Tenth Amendment to the
          UnitedStates Constitution and the "Anticommandeering" Principle........................ 18

     CONCLUSION........................................................................................ 20

     CERTIFICATE OF COMPLIANCE .......................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

**Federal Cases**

*Berman v. Parker*,
    348 U.S. 26 (1954) ................................................................................................... 19

*Brinkmeyer v. Wash. State Liquor & Cannabis Bd.*,
    No. C20-5661 BHS, 2020 U.S. Dist. LEXIS 184331 (W.D. Wash. Oct. 5, 2020) ................... 5

*Carter v. Inslee*,
    2016 U.S. Dist. LEXIS 187207 (W.D. Wash. 2016) ................................................................ 4

*Freightliner Corp. v. Myrick*,
    514 U.S. 280 (1995) ................................................................................................... 17

*Grandpa Bud, Ltd. Liab. Co. v. Chelan Cty. Wash.*,
    No. 2:19-CV-51-RMP, 2020 U.S. Dist. LEXIS 91724 (E.D. Wash. May 26,
    2020) ................................................................................................................................. 5

*Hillsborough County, Fla. v. Auto. Medical Laboratories, Inc.*,
    471 U.S. 707 (1985) ................................................................................................... 17

*Kansas v. Garcia*,
    140 S. Ct. 791 (2020) ................................................................................................. 19

*Mugler v. Kansas*,
    123 U.S. 623 (1887) ................................................................................................... 19

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
    138 S. Ct. 1461, 200 L. Ed. 2d 854 (2018) ................................................. 12, 13, 14, 15, 19, 20

*New York v. United States*,
    505 U. S. 144, 112 S. Ct. 2408, 120 L. Ed. 2d 120 (1992) ............................................... 19, 20

*Printz v. United States*,
    521 U.S. 898 (1997) ................................................................................................... 20

*U.S. v. Morrison*,
    529 U.S. 598 (2000) ................................................................................................... 18

*United States v. Lopez*,
    514 U.S. 549 (1995) ................................................................................................... 19

*West v. Holder*,
    60 F. Supp. 3d 197 (D.D.C. 2015) ................................................................................ 4

*West v. Lynch*,
    845 F.3d 1228 (D.C. Cir. 2017) ................................................................................... 3

**State Cases**

*Cannabis Action Coal. v. City of Kent*,
    183 Wash. 2d 219 (2015) ................................................................................4

*City of Clarkston v. Valle Del Rio*,
    LLC, No. 33682-4-III, 2016 Wash. App. LEXIS 2637 (Ct. App. Nov. 1, 2016).....................5

*In re Declaratory Order for Kittitas Cty.*,
    8 Wash. App. 2d 585, 587, 438 P.3d 1199 (2019) ................................................5

*Emerald Enters., LLC v. Clark Cty.*,
    2 Wash. App. 2d 794, 799-800 (2018) ..............................................................3

*Greensun Grp., LLC v. City of Bellevue*,
    7 Wash. App. 2d 754, 759 (2019)....................................................................7

*Haines-Marchel v. Wash. State Liquor & Cannabis Bd.*,
    1 Wash. App. 2d 712, 716 (2017)....................................................................5

*Headspace Int'l LLC v. Podworks Corp.*,
    5 Wash. App. 2d 883, 898 (2018)....................................................................4

*People v. Bly*,
    No. C068111, 2012 Cal. App. Unpub. LEXIS 8884 (December 5, 2012) ..............................5

*State v. Robison*,
    192 Wash. App. 658 (2016)...........................................................................5

*State v. Souza*,
    No. 34154-2-III, 2017 Wash. App. LEXIS 1607 (Ct. App. July 11, 2017) ...........................6

**Federal Statutes**

21 U.S.C. § 844(a) ......................................................................................15

21 U.S.C. § 861(f)(1) ...................................................................................15

21 U.S.C. § 863 .................................................................................8, 12, 19

21 U.S.C. § 863(d) ......................................................................................10

21 U.S.C. § 863(d)(12) .................................................................................10

21 U.S.C. § 863(f)(1) ...............................................................................*passim*

21 U.S.C. § 903 ...........................................................................12, 15, 16, 17

Controlled Substances Act...............................................................12, 15, 17

Professional and Amateur Sports Protection Act ....................................13, 20

**State Statutes**

19 C.F.R. § 177.9(a) ................................................................................................ 8

RCW §§ 69.50, *et seq.* ............................................................................................ 3

RCW § 69.50.4013(3) .............................................................................................. 4

RCW § 69.50.412 .................................................................................................8, 14

RCW § 69.50.535 ................................................................................................... 10

**Regulations**

CBP Headquarters Ruling H306125 ......................................................................... 8

WAC § 314-55-010 ............................................................................................... 11

WAC § 314-55-035 ................................................................................................. 5

WAC § 314-55-079 ............................................................................................... 11

WAC § 314-55-104 ............................................................................................... 11

**Other Authorities**

Bender, Steven W., *Joint Reform?: The Interplay of State, Federal, and Hemispheric Regulation of Recreational Marijuana and the Failed War on Drugs*, 6 Alb. Gov't L. Rev. 359, 373-74 (2013) .................................................................... 6

Clancy, Sean K., *Branded Bud or Generic Ganja? Trademarks for Marijuana in Washington*, 18 Lewis & Clark L. Rev. 1063, 1064 (2014) .................................... 7

Dragan M. Svrakic, *et al., Legalization, Decriminalization & Medical Use of Cannabis: A Scientific and Public Health Perspective*, 109 J. Mo. St. Med. Ass'n 90, 90 (2012) ..................................................................................................... 2

Houser, Kimberly A., *Legalizing Marijuana: State and Federal Issue: What Inconsistent Federal Policy Means for Marijuana Business Owners*, 50 Gonz. L. Rev. 305 (2015) ............................................................................................... 6

Memorandum for All United States Attorneys: Guidance Regarding Marijuana Enforcement, U.S. Department of Justice (August 29, 2013) .................................. 9

Munoz, Andres E., *Blunt the Violence: How Legal Marijuana Regulation in the United States Can Help End the Cartel Violence in Mexico*, 13 Seattle J. Soc. Just. 691, 714 (2014) .......................................................................................... 6

Nguyen, Jeremiah, *States Projected to Post Higher Marijuana Revenues in 2021*, The Tax Foundation (August 3, 2021) .......................................................................... 9

Sweeney, Rebecca, *Unrealistic Expectations: The Federal Government's Unachievable Mandate For State Cannabis Regulation*, 93 Wash. L. Rev. 2175 (2018)............................................................................................................................... 6

Dennis, Brady, *Obama administration will not block state marijuana laws if distribution is regulated*, The Washington Post (August 29, 2013)........................... 9

Whittenburg, Jake, *Where Does Washington's Marijuana Tax Money Go?* King 5 (August 8, 2018) .................................................................................................... 10

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: HONORABLE CLAIRE R. KELLY**

-------------------------------------------------------------------------- **X**
                                                                          :
**KEIRTON USA, INC., a Washington Corporation,**                         :     Case No.: 1:21-cv-00452-CRK
                                                                          :
                    **Plaintiff,**                                        :     RESPONSE IN OPPOSITION TO
                                                                          :     DEFENDANT'S CROSS MOTION
              **vs.**                                                     :     FOR JUDGMENT ON THE
                                                                          :     PLEADINGS AND REPLY IN
**U.S. CUSTOMS AND BORDER PROTECTION, a**                                 :     SUPPORT OF PLAINTIFF'S
**federal agency,**                                                       :     MOTION FOR JUDGMENT ON
                                                                          :     THE PLEADINGS
                    **Defendant.**                                        :
                                                                          :
-------------------------------------------------------------------------- **X**


**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S CROSS MOTION
FOR JUDGMENT ON THE PLEADINGS AND REPLY IN SUPPORT OF
ITS MOTIONFOR JUDGMENT ON THE PLEADINGS**

Plaintiff, Keirton USA, Inc. ("Keirton"), opposes the cross motion of Defendant, U.S.

Customs and Border Protection ("CBP"), for judgment on the pleadings (Docket 21) ("CBP

Brief"), and replies in support of its motion for judgment on the pleadings (Docket 17) ("Keirton

Brief").

**ARGUMENT**

I.      **Washington State Legalized Marijuana[1] and Marijuana "Drug Paraphernalia" Such
        that the Manufacture, Possession, and Distribution of Keirton's Merchandise is
        Authorized Pursuant to Washington State Laws and Regulations.**

CBP contends that Washington State has only removed the threat of prosecution with

respect to marijuana drug paraphernalia under state law, despite the State's robust and successful

---

[1] The terms "cannabis" and "marijuana" are currently used interchangeably in regulations, cases, and the press. Note that effective June 9, 2022, Washington State will replace the word "marijuana" in the Revised Code of Washington (RCW) with the word "cannabis." https://lawfilesext.leg.wa.gov/biennium/2021-22/Pdf/Bills/House%20Passed%20Legislature/1210-S2.PL.pdf?q=20220501211026 (last visited May 1, 2022). This change is immaterial to the legal questions presented in this case.

regulatory and taxation scheme that has generated over a billion dollars in tax revenue since its inception. Washington State has gone beyond simply removing the threat of prosecution for marijuana drug paraphernalia and instead has legalized a substance and activity that is regulated and taxed. Furthermore, Washington State has removed agricultural equipment for processing marijuana, such as the equipment manufactured and distributed by Keirton, from its definition of "drug paraphernalia." Keirton is therefore exempt from marijuana retailer license requirements.

To be sure, removing the threat of prosecution with respect to marijuana and marijuana drug paraphernalia is not the same thing as marijuana legalization. CBP does not use the word "decriminalization," but removing the threat of prosecution is essentially decriminalization. One commentator distinguishes between decriminalization and legalization as follows: "Legalization of cannabis is the process of removing all legal prohibitions against it… Decriminalization of cannabis means that it would remain illegal, but the legal system would not prosecute a person for possession under a specified amount. Instead, the penalties would range from no penalties at all, civil fines, drug education, or drug treatment." Dragan M. Svrakic, *et al., Legalization, Decriminalization & Medical Use of Cannabis: A Scientific and Public Health Perspective*, 109 J. Mo. St. Med. Ass'n 90, 90 (2012); *see also e.g., Regulating Commercially Legalized Marijuana as a Public Health Priority*, Am. Pub. Health Ass'n, Policy No. 201410 (November 18, 2014), https://www.apha.org/policies-and-advocacy/public-health-policy-statements/policy-database/2015/01/23/10/17/regulating-commercially-legalized-marijuana-as-a-public-health-priority (last visited May 1, 2022) ("After <u>voters in Colorado and Washington elected to legalize marijuana</u>, these states began to establish regulatory schemes for its cultivation, distribution, and retail sale to those 21 years of age and older. Under these and other regulatory proposals, marijuana would be regulated in a manner similar to alcohol, with age limits, licensing controls, and other regulatory and public health mechanisms.")(emphasis added). This conceptualization correctly recognizes that

by simply removing the threat of prosecution, the use or possession of marijuana or marijuana "drug paraphernalia" remains illegal, unauthorized, and potentially subject to penalties; whereas, under a marijuana *legalization* scheme, a person cannot be penalized in any way, including having their marijuana "drug paraphernalia" seized, for using or possessing marijuana or marijuana "drug paraphernalia" so long as they are acting in accordance with explicit state laws and regulations.

### A.      Initiative 502 *Legalized* Marijuana and Marijuana "Drug Paraphernalia."

The legal marijuana landscape changed forever in 2012 when Washington State voters passed Initiative 502, which legalized the production, possession, delivery, and distribution of marijuana and marijuana "drug paraphernalia," and regulated the sale of small amounts of marijuana to people 21 and older. The legislature subsequently codified I-502 within Washington's UCSA[2]. *Emerald Enters., LLC v. Clark Cty.*, 2 Wash. App. 2d 794, 799-800 (2018). Initiative 502 is codified as RCW Chapter 69.50, *et seq*. Following the success of I-502, Courts, legal scholars, the Washington State Liquor and Cannabis Board, and CBP itself uniformly agreed that Initiative 502 legalized marijuana in Washington State.[3]

### 1.      Courts Agree That Initiative 502 *Legalized* Marijuana and Marijuana "Drug Paraphernalia."

There are abundant examples of cases where Courts have held that Initiative 502 legalized marijuana "drug paraphernalia." Washington State's Initiative 502 was the subject of litigation in the Court of Appeals for the District of Columbia in *West v. Lynch*, 845 F.3d 1228, 1232 (D.C. Cir. 2017), which explained:

> In November 2012, <u>Washington voters approved Initiative 502 (I-502), which **legalized the recreational use of marijuana**</u>. Act of Nov. 6, 2012, ch. 3, 2013 Wash. Sess. Laws 28. I-502 set up a licensing regime for marijuana producers, processors and retailers. *Id*. at 33-52. It also provided for a marijuana excise tax andsubjected retail marijuana sales to ordinary sales tax. *Id*. at 52-53. With the

---

[2] We refer to "I-502" as the initiative voted on by the public that legalized marijuana and marijuana paraphernalia by amending the applicable RCW provisions. "UCSA" refers to the relevant sections of the Washington Statutes that codified I-502.

[3] Notably, there are no authorities that describe I-502 as anything other than a legalization measure.

exception of a broad prohibition on using marijuana or marijuana-infused products "in view of the general public," *id*. at 44, I-502 did not modify the regime governing medical marijuana that had existed since the late 1990s, including provisions permitting the possession of up to 24 ounces of medical marijuana and allowing for the creation of collective gardens. Instead <u>I-502 provided that any user over the age of 21 can, **without violating "any … provision of Washington state law**," possess up to one ounce of useable marijuana</u>. *Id*.; *see id*. at 42.

(emphasis added); *see also West v. Holder*, 60 F. Supp. 3d 197, 198 (D.D.C. 2015) ("Washington's <u>I-502</u> measure—which **<u>legalized the recreational use, possession, and sale of marijuana</u>** by licensed individuals within the state—remains on the books.")(emphasis added).

The same conclusion was reached by the Washington State Supreme Court in *Cannabis Action Coal. v. City of Kent*, 183 Wash. 2d 219, 222-23 (2015), with the court observing that I-502 "create[d] a system for the licensed distribution of recreational marijuana and to **legalize** the possession of marijuana in certain circumstances. *See* RCW § 69.50.4013(3)" (emphasis added).

Likewise, in *Headspace Int'l LLC v. Podworks Corp*., 5 Wash. App. 2d 883, 898 (2018), the Washington State Court of Appeals explained:

> The intent of the voters who approved I-502 was clear: **to legalize the business of producing, processing, and selling marijuana pursuant to a strict regulatory framework**. However, the WSLCB did not view I-502 as authorizing or requiring it to monitor all licensing agreements entered into by licensed marijuana businesses for trademarks and proprietary information relating to the processing of marijuana products. As a result, the WSLCB did not develop the regulations necessary to monitor the industry's use of such agreements, contravening the intent of the voters as perceived by the legislature. To correct this misperception by the executive branch agency and "continue the regulation" of Washington's experiment with legal marijuana, the legislature passed a "clean-up bill" that, in part, clarified for the WSLCB its obligation to monitor licensing agreements entered into by licensed marijuana businesses. ESSB 5131's legislative history is devoid of any indication that the legislature sought to make legal any licensing agreements that had been previously illegal. Instead, its purpose was to better regulate that **which I-502 had previously legalized**.

(emphasis added); *see also Carter v. Inslee,* 2016 U.S. Dist. LEXIS 187207, *3 (W.D. Wash. 2016) ("I-502 **legalized** the possession and recreational use of marijuana for adults, and established a regulatory program for the intrastate production, processing, and retail sales of marijuana.")(emphasis added); *Greensun Grp., LLC v. City of Bellevue*, 7 Wash. App. 2d 754,

759 (2019) ("I-502, in part, **legalized** the possession of limited amounts of marijuana and directed the Washington State Liquor Control Board (LCB) to develop and implement rules to regulate and tax recreational marijuana retailers by December 31, 2013.")(emphasis added); *State v. Robison*, 192 Wash. App. 658, 663 (2016) ("On November 6, 2012, Washington voters enacted Initiative 502, **legalizing** some uses of marijuana.") (emphasis added); *Haines-Marchel v. Wash. State Liquor & Cannabis Bd*., 1 Wash. App. 2d 712, 716 (2017) ("Initiative 502 **legalizes** the possession and sale of marijuana and creates a system for the distribution and sale of recreational marijuana… Because WAC 314-55-035 is rationally related to the **legitimate interest of the State to legalize and strictly control issuance of a retail marijuana license**, [plaintiff's] cannot show that as applied, WAC 314-55-035 is unconstitutional.")(emphasis added); *Brinkmeyer v. Wash. State Liquor & Cannabis Bd*., No.C20-5661 BHS, 2020 U.S. Dist. LEXIS 184331, at *1-2 (W.D. Wash. Oct. 5, 2020) ("In 2012, Washington voters approved the **legalization** and sale of marijuana.")(emphasis added); *In re Declaratory Order for Kittitas Cty*., 8 Wash. App. 2d 585, 587, 438 P.3d 1199, 1200 (2019) ("Washington voters **legalized** the sale and use of recreational marijuana in 2012. Initiative 502, Laws of 2013, ch. 3. The new law created a legal marketplace for marijuana and delegated licensing, regulatory, and oversight powers to the Board. RCW § 69.50.325, .331.")(emphasis added); *People v. Bly*, No. C068111, 2012 Cal.App. Unpub. LEXIS 8884, at *11 n.5 (December 5, 2012) (" … the voters in Washington passed Initiative 502, which, among other things, **legalizes** the possession of marijuana under certain circumstances.")(emphasis added); *City of Clarkston v. Valle Del Rio*, LLC, No. 33682-4-III, 2016 Wash. App.LEXIS 2637, at *2 (Ct. App. Nov. 1, 2016) ("Washington voters approved Initiative 502, which **legalized** the licensed production and sale of marijuana.")(emphasis added); *Grandpa Bud, Ltd. Liab. Co. v. Chelan Cty. Wash*., No. 2:19-CV-51-RMP, 2020 U.S. Dist. LEXIS

91724, at *3 (E.D. Wash. May 26, 2020); *State v. Souza*, No. 34154-2-III, 2017 Wash. App. LEXIS 1607, at *4 (Ct. App. July 11, 2017).

These decisions leave no doubt that Washington State, via Initiative 502, legalized marijuana and marijuana "drug paraphernalia" and did not simply remove the threat of prosecution.

### 2. Legal Scholars Agree That Initiative 502 *Legalized* Marijuana and Marijuana "Drug Paraphernalia."

Legal scholars also unanimously describe Initiative 502 as a marijuana and marijuana "drug paraphernalia" *legalization* measure. *See e.g.,* Houser, Kimberly A., *Legalizing Marijuana:State and Federal Issue: What Inconsistent Federal Policy Means for Marijuana Business Owners*, 50 Gonz. L. Rev. 305, 313 (2015) ("Washington Initiative 502 **legalized** the use of marijuana and regulated it similar to the way the state regulates alcohol.")(emphasis added); Bender, Steven W., *Joint Reform?: The Interplay of State, Federal, and Hemispheric Regulation of Recreational Marijuana and the Failed War on Drugs*, 6 Alb. Gov't L. Rev. 359, 373-74 (2013) ("Passed by voters in Colorado and Washington in the 2012 election, ballot initiatives in both states **legalized r**ecreational marijuana and garnered national attention. Washington's Initiative 502, approved by 55.7% of voters, **legalized** up to one ounce of marijuana possession, 16 ounces of a solid product such as marijuana cookies or 72 ounces of marijuana infused liquid, for personal use by adults.")(emphasis added); Munoz, Andres E., *Blunt the Violence: How Legal Marijuana Regulation in the United States Can Help End the Cartel Violence in Mexico*, 13 Seattle J. Soc. Just. 691, 714 (2014) ("Voters in Washington approved I-502 by 55.7 percent, **legalizing** possession of up to one ounce of loose leaf marijuana.")(emphasis added); Sweeney, Rebecca, *Unrealistic Expectations: The Federal Government's Unachievable Mandate For State Cannabis Regulation*, 93 Wash. L. Rev. 2175, 2176 (2018) ("On November 6, 2012, Washington voters decided to legalize recreational marijuana, also known as cannabis. Voters approved legalized recreational

cannabis through Initiative 502, which contradicted the past '75 years of national marijuana prohibition.'")(internal citations omitted); Clancy, Sean K., *Branded Bud or Generic Ganja? Trademarks for Marijuana in Washington*, 18 Lewis & Clark L. Rev. 1063, 1064 (2014) ("In November 2014, Washington, D.C., Oregon, and Alaska voters chose to join Colorado and Washington by legalizing marijuana for non-medical use among responsible adults."); McErlean, Elizabeth D., *The Real Green Issue Regarding Recreational Marijuana: Federal Tax and Banking Laws in Need of Reform*, 64 DePaul L. Rev. 1079, 1088 (2015) ("Washington's Initiative 502, approved by 55.7% of voters, legalizes up to one ounce of marijuana possession, 16 ounces of a solid product such as marijuana cookies, or 72 ounces of marijuana infused liquid, for personal use by adults.").

Legal scholars are thus in agreement with the Courts that Washington State legalized marijuana and marijuana "drug paraphernalia" in I-502.

### 3.   The Washington State Liquor and Cannabis Board Agrees That Initiative 502 *Legalized* Marijuana and Marijuana "Drug Paraphernalia."

Additionally, the agency responsible for administering the recreational and medical cannabis market in Washington State is unequivocal in describing I-502 as a legalization measure. On the Washington State Liquor and Cannabis Board's home page for "cannabis education," the agency states that "Washington voters **legalized** cannabis for adult recreational use through the passage of Initiative I-502 in November 2012." *See e.g.,* WSLCB: Cannabis Education, https://lcb.wa.gov/mj-education/marijuana-education (last visited May 1, 2022)(emphasis added). In various annual reports and meeting minutes, the WSLCB references legalized cannabis use, even noting that I-502 "went beyond merely legalizing cannabis in Washington." *See e.g.,* Meeting Minutes, Washington State Liquor and Cannabis Board Meeting, at 8 (November 18, 2020), accessible at

https://lcb.wa.gov/sites/default/files/publications/board/2020_Board_Agendas/11%2018%2020%20BO

ARD%20MEETING%20MINUTES%20-%20Signed.pdf (last visited May 1, 2022).

    **4.**      **CBP Itself, and the Federal Government, Concedes That Washington *Legalized* Marijuana and Marijuana "Drug Paraphernalia" in I-502.**

CBP's position in this case is that the authorization exemption of 21 U.S.C. § 863(f)(1) is

inapplicable under these facts because Washington State simply removed the threat of prosecution.

Without citation or authority to support, CBP argues that RCW § 69.50.412 "merely removes the threat of

prosecution with respect to marijuana-related drug paraphernalia under state law." Curiously, CBP

Headquarters itself has evaluated the Washington State laws and has explicitly described the

Washington State law as a legalization, rather than decriminalization, measure. In CBP

Headquarters Ruling H306125[4] (August 5, 2020), CBP Headquarters explains that "… the fact

that **cannabis possession is legal** under the state laws of California, Washington, and other states

has no bearing on the present ruling request; regardless, the sale and possession of cannabis

remain unlawful in Georgia, the state in which you intend to import the subject merchandise.

Although the **possession and use of cannabis may be legal under some states' laws**, 21 U.S.C. §

863 is a federal statute that prohibits the importation of drug paraphernalia." (emphasis added). As

described above, legalization goes beyond removing the threat of prosecution, and CBP has

already agreed that Washington State has legalized marijuana possession.

The idea that CBP is now trying to make the legalization of marijuana in Washington State

something different is an indicator of how threadbare its opposition truly is. After all, even the

Federal government agrees that Washington State has *legalized* marijuana. On August 29, 2013,

the Deputy Attorney General sent out a memorandum for all United States attorneys with guidance

---

[4] CBP Regulations provide that a ruling represents the "official position" of CBP and "is binding on all [CBP] personnel in accordance with the provisions of this section until modified or revoked." 19 C.F.R. § 177.9(a). Keirton understands that this Ruling dealt with a different type of merchandise. However, this does not negate the assertion that CBP admits that cannabis possession is *legal* under Washington State law.

regarding marijuana enforcement that acknowledged some state laws had legalized marijuana

production, process, and sale. Memorandum for All United States Attorneys: Guidance Regarding

Marijuana Enforcement, U.S. Department of Justice (August 29, 2013),

https://www.justice.gov/iso/opa/resources/3052013829132756857467.pdf (last visited May 2,

2022). The same memorandum conceded that "the federal government has traditionally relied on

states and local law enforcement agencies to address marijuana activity through enforcement **of**

**their own narcotics law**." *Id*. at 2. Concurrently, the Obama administration indicated that it would

not "challenge laws legalizing marijuana in Colorado and Washington State as long as those states

maintain strict rules involving the sale and distribution of those drugs." Dennis, Brady, *Obama*

*administration will not block state marijuana laws if distribution is regulated*, The Washington

Post (August 29, 2013), https://www.washingtonpost.com/national/health-science/obama-

administration-will-not-preempt-state-marijuana-laws--for-now/2013/08/29/b725bfd8-10bd-11e3-

8cdd-bcdc09410972_story.html (last visited May 2, 2022). Attorney General Eric H. Holder Jr.

even called the governors of Colorado and Washington to information them of the decision, and

"Washington Gov. Jay Inslee (D), in a statement with state Attorney General Bob Ferguson, said

the guidance 'reflects a balanced approach by the federal government **that respect the states'**

**interests** in implementing these laws . . .'". *Id*. (emphasis added).

### B.    Simply Removing The Threat of Prosecution for a Formerly Controlled Substance Would Not Involve Robust Taxation of that Substance.

CBP fails to point out any circumstances where the removal of a threat of prosecution for a

formerly controlled substance then results in a complicated scheme of taxation and regulation by

the State government. Nearly $2 billion dollars in taxes were collected in Fiscal Year 2020 in

States with operational recreational marijuana markets, and Washington State is the top collector of

marijuana tax revenue per capita, at $61.52 collected per resident. Nguyen, Jeremiah, *States*

*Projected to Post Higher Marijuana Revenues in 2021*, The Tax Foundation (August 3, 2021), https://taxfoundation.org/states-projected-post-higher-marijuana-revenues-2021/ (last visited May 1, 2022). The Government's position is absurd in light of the successful taxation schemes that have grown in States with legal recreational marijuana.[5] In Washington State, all retail sales are subject to a 37% tax paid to the retailer by the customer,[6] but according to the Government, even though Washington State collected an estimated $61.52 figure per resident, each of those sales resulted in the customer gaining possession of a product they presumably could not use or ingest without federally prohibited "drug paraphernalia" assisting their ingestion. And, to be clear, the U.S. Code's broad definition encompasses nearly every item imaginable, 21 U.S.C. § 863(d), and includes a completely random assortment of exemplars. For example, no Washington State marijuana-tax paying customer could lawfully possess or use a bong to use marijuana legally in Washington State. *See* 21 U.S.C. § 863(d)(12). Notably, a recreational marijuana user would not need a doctor's prescription to possess marijuana but yet is still "authorized" to use marijuana legally in Washington State.

   **C.   Processing equipment for marijuana is specifically excluded from the Washington State definition of drug paraphernalia, so Keirton does not need a marijuana retailer license.**

   Most importantly, Keirton's merchandise that was detained by CBP is not considered "drug paraphernalia" under Washington State laws. According to CBP, because "Keirton does not allege that it possess any Washington license," then there is no Washington State law that authorizes Keirton to manufacture, possess, or distribute its detained merchandise. CBP Brief at 16. Regardless

---

[5] *See e.g.,* Whittenburg, Jake, *Where Does Washington's Marijuana Tax Money Go?*, King 5 (August 8, 2018), https://www.king5.com/article/news/local/where-does-washingtons-marijuana-tax-money-go/281-581833195 (last visited May 1, 2022) ("Every retail license available in Washington state has been sold out for months. And last year, total sales surpassed a billion dollars—just five years after **voters approved legalized recreational marijuana**. Today, marijuana excise tax revenue is flowing in faster than the state first predicted, and the fight over how to distribute the money is expected to be another hot topic in the next legislative session." (emphasis added)).
[6] *See e.g.,* RCW § 69.50.535 (providing for a 37% excise tax on all retail sales of marijuana).

of CBP's mischaracterization of Keirton's argument concerning how the Washington State laws interact with the Section 863(f)(1) exemption, CBP cited a Washington Administrative Code section that does not apply to Keirton. Keirton is exempt from Washington State's marijuana retailer license requirement because its agricultural equipment is used to *process* marijuana.

Pursuant to the Washington Administrative Code ("WAC"), "paraphernalia" does not cover "items for growing, cultivating, and processing marijuana." *See* WAC § 314-55-010 (27).[7] This definition is in the same chapter as the section cited by the CBP (WAC § 314-55-079). Because Keirton's merchandise falls squarely within this exemption for "paraphernalia," under Washington State laws, Keirton's merchandise is not considered drug paraphernalia.

Even if the Court agrees with CBP that there is no specific Washington State law that authorizes Keirton to manufacture and distribute its agricultural equipment, Keirton does not need a Washington law to specifically authorize Keirton's manufacture and distribution of its agricultural equipment. While Keirton disagrees with the logic laid out in CBP's brief, CBP claims no Washington law authorizes Keirton to manufacture, possess, or distribute anything, and thus Keirton lacks "authorization" for purposes of the subsection (f)(1) exemption. CBP Brief at 16. Washington State does not require Keirton to obtain a marijuana retailer license because it does not consider Keirton's products to be marijuana paraphernalia. Washington is not only removing the possibility of prosecution under state law. The State is declining to regulate Keirton's agricultural products as drug paraphernalia, thereby authorizing Keirton to manufacture and distribute its merchandise without a marijuana retailer license.[8]

---

[7] Title 314 of the WAC governs the Liquor and Cannabis Board, and Chapter 314-55 of the WAC concerns Marijuana Licenses, Application Process, Requirements, and Reporting.

[8] While Washington State does not require a license for farming, agricultural, or harvesting equipment, it does require licensed engineer review and prior certification of certain devices used by State-licensed marijuana processors. For example, Washington State law imposes significant and stringent requirements on marijuana extractors. *See e.g.*, WAC § 314-55-104 ("Marijuana Processor License Extraction Requirements"). However, Keirton's merchandise is not considered a marijuana extractor, and Keirton is not in the business of harvesting or processing marijuana.

## II.     CBP's Conception of the Term "Authorization" as Set Out in 21 U.S.C. § 863(f)(1), is Contrary to the United States Supreme Court's Definition of "Authorization," and is Otherwise Indefensible.

CBP offers a contorted argument asserting that Keirton is not specifically authorized by State law to manufacture, possess, and distribute its merchandise. As a reminder, the Federal authorization exemption in 21 U.S.C. § 863(f)(1) provides that Section 863 "shall not apply to any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items." CBP focuses on the word "authorized"[9] and argues that Congress intended that State law authorizations must "affirmatively empower Keirton to manufacture, possess, or distribute drug paraphernalia." CBP Brief at 23. CBP appears to be refusing to follow the clearly stated intentions of Congress.

CBP's argument fails for three reasons. First, CBP's theory is inconsistent with the definition of "authorize" as expressed by the United States Supreme Court in cases such as *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 200 L. Ed. 2d 854 (2018). Second, CBP's interpretation runs afoul of the specific rule of construction found in the Controlled Substances Act provided at 21 U.S.C. § 903. Third, to the extent CBP seeks to engraft a person-specific authorization via a licensing requirement onto State law, such an interpretation would draw Section 863(f)(1) into conflict with the Tenth Amendment of the U.S. Constitution.

### A.     Repeal of a Prohibition is "Authorization" Under 21 U.S.C. § 863(f)(1).

Washington State repealed a state prohibition of possessing, distributing, or manufacturing marijuana "drug paraphernalia," and that repeal gives Keirton a "right or authority to act." *See Murphy*, 138 S. Ct. at 1474. No specific regulatory license, permit, or other grant is required for

---

[9] Keirton is increasingly unclear of the circumstances, if any, where the Government would recognize as valid the Federal authorization exemption. *See* 21 U.S.C. § 863(f)(1). The arguments raised in CBP's brief provide no roadmap for importers of marijuana "drug paraphernalia" to comply with the Government's (ambiguous and unspecified) interpretation of § 863(f)(1).

Keirton to be authorized by law to manufacture, possess, or distribute its merchandise. Because Washington's repeal gives Keirton a right or authority to act, the repeal triggers the exemption in 21 U.S.C. §863(f)(1).

CBP incorrectly asserts that Washington's repeal of its prohibitions against marijuana and marijuana "drug paraphernalia" is not enough to constitute an authorization to possess or distribute Keirton's merchandise. Rather, CBP asserts that State law must include a person-specific "authorization," such as a license, permit, or other grant of authority issued specifically to Keirton. However, not only does Washington State not require licenses for marijuana "drug paraphernalia" and does not consider Keirton's merchandise "drug paraphernalia," the U.S. Supreme Court rejected CBP's formulation of the concept of "authorization" in *Murphy*. *See id*.

*Murphy* involved a challenge to the constitutionality of the Professional and Amateur Sports Protection Act ("PAPSA"), P.L. 102-559, 106 Stat. 4227 (1992). PAPSA contained a provision prohibiting states from enacting statutes "authorizing" sports gambling. Some years after PAPSA was enacted, the State of New Jersey decided that it wanted to allow the operation of sports books at the State's declining Atlantic City casinos. New Jersey voters in 2011 changed the State's Constitution to allow the legislature to authorize sports gambling. In 2012, the legislature enacted a law doing precisely that. The National Collegiate Athletic Association ("NCAA"), a regulatory body which sponsors intercollegiate sporting competitions, brought suit to enjoin New Jersey from proceeding. An initial issue presented to the *Murphy* Court was whether the New Jersey legislation, by lifting the legal restriction on sports gambling, constituted "authorization" of such gambling in violation of PAPSA. The respondents in *Murphy* offered a narrow view of "authorization," arguing, as CBP does here, that "authorization" requires a specific State-grant of permission directed to and held by an individual. *Id*. at 1473.

The Supreme Court disagreed with the narrow view of authorization, instead holding that the repeal of a state prohibition not only permits the formerly prohibited act but also gives the right or authority to act. *Id*. at 1474 ("The repeal of a state law banning sports gambling not only 'permits' sports gambling (petitioners' favored definition); it also gives those now free to conduct a sports betting operation the 'right or authority to act'; it 'empowers' them"). Importantly, the Supreme Court noted that "[t]he concept of state 'authorization' makes sense only against a backdrop of prohibition or regulation… We commonly speak of state authorization only if the activity in question would otherwise be restricted." *Id*.

*Murphy* is analogous to the case at hand. Washington State previously defined marijuana "drug paraphernalia" the same as all other drug paraphernalia. With the passage of I-502, however, Washington amended RCW § 69.50.412 to authorize the possession of marijuana "drug paraphernalia" by persons over the age of 21 and legalized the possession and distribution marijuana and marijuana "drug paraphernalia." The repeal of Washington's former prohibition not only permits persons to possess or distribute marijuana "drug paraphernalia" but also gives persons the "right or authority to act" – essentially, an authorization. *See id*.

Finally, the Supreme Court in *Murphy* rejected the assertion by amicus United States that an activity left unregulated could not therefore be considered acting "pursuant to state law," instead contending that if the activity were previously prohibited, then a person conducting that activity could be said to be doing so "pursuant to state law." *Id*. ("… one might well say exactly that if the person previously was prohibited from engaging in the activity. ('Now that the State has legalized the sale of marijuana, Joe is able to sell the drug pursuant to state law.')"). Similarly, now that Washington State has legalized the distribution of marijuana "drug paraphernalia" and

explicitly noted that processing equipment for marijuana is not considered "drug paraphernalia," Keirton is able to manufacture and distribute its merchandise pursuant to state law.[10]

### B.     Defendant's Formulation of "Authorization" Violates the Canon of Construction Laid Out In 21 U.S.C. § 903.

CBP appears to be arguing that Section 863(f)(1) requires Washington State to issue authorization to a single individual person (as opposed to an authorization of all individuals or to a class of individuals) through a person-specific permit or license[11]. In effect, CBP seeks to impose Federal conditions on Washington State's police power to regulate "drug paraphernalia" for use with marijuana. This imposition violates the Controlled Substances Act, 21 U.S.C. § 903, which holds that Congress cannot occupy the field in which State regulation operates.

The Controlled Substances Act provides, "No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together." 21 U.S.C. § 903. This section is clear. In construing the provisions of the given subchapter, which includes 21 U.S.C. § 861(f)(1), the reviewing court may not give the statute a construction that allows Congress to occupy the field in which State regulation operates,

---

[10] CBP argues that the relevant statute in *Murphy* is so different from 21 U.S.C. § 863(f)(1) that *Murphy*'s definition of "authorization" does not apply to Section 863(f)(1), asserting that "authorization" used in an exemption for otherwise prohibited conduct is different from authorization that would violate a broad ban. CBP Brief at 17. CBP provides no authority for its assertion that an exemption warrants a narrow reading of an authorization triggering the exemption. CBP also provides no examples of what would constitute a "narrow reading" of Section 863(f)(1). While the statute in *Murphy* is different from Section 863(f)(1), this fact does not negate the relevance of *Murphy*, in which the Supreme Court importantly notes that the concept of state authorization makes sense only against the backdrop of prior prohibition. In the case at hand, Washington State previously prohibited marijuana "drug paraphernalia" from being distributed. However, that prohibition has been repealed, so following *Murphy*, a prohibition repeal is the same as state authorization.

[11] CBP presents 21 U.S.C. § 844(a) as an example of adequate "authorization," asserting that a patient is authorized to possess a particular controlled substance if given a valid prescription by a doctor. CBP Brief at 13-14. However, if Congress intended for this to be the only example of a valid authorization, it would have clearly specified doctor prescriptions in Section 863(f)(1).

unless a positive conflict exists that makes it impossible for the State and Federal law to coexist. Because Section 863(f)(1) directly incorporates State authorization into the scope of the exemption, there is no conflict between the State authorization and Federal law. Therefore, CBP cannot ignore Washington State's existing authorization regimes for the distribution of marijuana "drug paraphernalia."

There are cases supporting the idea that 21 U.S.C. § 903 was intended to properly limit operation of the Supremacy Clause. In *Oregon Prescription Drug Monitoring Program v. United States DEA*, the DEA issued subpoenas to certain physicians licensed in the State of Oregon. 860 F.3d 1228 (9th Cir. 2017). Oregon authorities sought to block the subpoenas on the ground that they conflicted with Oregon law, which required a court order to obtain records from physicians by subpoena. The Ninth Circuit explained the impact of 21 U.S.C. § 903 on this dispute:

> The Supremacy Clause gives Congress "the power to pre-empt state law expressly." *Hillman v. Maretta*, 569 U.S. 483, 133 S. Ct. 1943, 1949, 186 L. Ed. 2d 43 (2013) (citation omitted). Congress did just that in the CSA, which contains an express preemption provision: state law is preempted whenever "there is a positive conflict between [a] provision of th[e CSA] and [a] State law so that the two cannot consistently stand together." 21 U.S.C. § 903. Because this carve-out is an express invocation of conflict preemption, we must determine whether "compliance with both federal and state regulations is a physical impossibility," or the "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98, 112 S. Ct. 2374, 120 L. Ed. 2d 73 (1992) (internal quotation marks and citations omitted); *accord United States v. Zadeh*, 820 F.3d 746, 750-52 (5th Cir. 2016) (applying the "obstacle" test to hold that 21 U.S.C. § 876 preempts a provision of the Texas Occupations Code under § 903).

860 F.3d 1228 at 1235-1236. The Ninth Circuit concluded that because Oregon's "probable cause" and court order requirements conflicted with the greater goals of the CSA, and because no "physical impossibility" situation was presented, the Federal Law allowing DEA to issue subpoenas preempted the state law.

Operation of 21 U.S.C. § 903 was also at issue in *Gonzalez v. Oregon*, where the State of Oregon enacted a physician-assisted end of life termination program. 546 U.S. 243 (2006). The

Federal Government sought to preempt operation of the State program through the issuance of an interpretative rule prohibiting the prescribing of the drugs necessary for the end-of-life termination procedures. The Supreme Court, applying 21 U.S.C. § 903, held that no basis for invoking the Supremacy Clause had been established:

> The structure and operation of the [Controlled Substances Act] presume and rely upon a functioning medical profession regulated under the States' police powers. The Attorney General can register a physician to dispense controlled substances "ifthe applicant is authorized to dispense . . . controlled substances under the laws of the State in which he practices." 21 U.S.C. § 823(f). When considering whether torevoke a physician's registration, the Attorney General looks not just to violations of federal drug laws; but he "shall" also consider "[t]he recommendation of the appropriate State licensing board or professional disciplinary authority" and the registrant's compliance with state and local drug laws. *Ibid*. The very definition ofa "practitioner" eligible to prescribe includes physicians "licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which he practices"to dispense controlled substances. § 802(21). Further cautioning against the conclusion that the CSA effectively displaces the States' general regulation of medical practice is the Act's preemption provision, which indicates that, **absent a positive conflict, none of the Act's provisions should be "construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates … to the exclusion of any State law on the same subjectmatter  which would otherwise be within the authority of the State." § 903.**

546 U.S. at 270-71 (emphasis added). The Court found no conflict that would justify a Federal preclusion of the State's power to regulate its medical profession, including in the area of prescribing drugs for end-of-life treatment.

Federal courts have interpreted the "positive conflict" language used in 21 U.S.C. § 903 to mean that state laws are preempted only in cases of actual conflict with federal law such that compliance with both federal and state law is a physical impossibility, *see e.g., Hillsborough County, Fla. v. Auto. Medical Laboratories, Inc*., 471 U.S. 707 (1985), or where state law stands as an obstacle to the accomplishment and execution of Congress' full purposes and objectives. *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287 (1995). Neither of these types of cases are present in this case at hand.

Had Congress intended to impose an outright ban on the importation of any and all drug paraphernalia, the authorization exemption of 21 U.S.C. § 863(f)(1) would not exist. If Congress did not require that the law look to State law authorizations to determine the extent of the exception to the import ban, then § 863(f)(1) would not reference State law "authoriz[ations]." As constructed, the Federal statute requires that CBP look to the scope of the State authorization to determine the scope of the authorization exemption to the Federal importation ban. Not only is there not any "physical impossibility" presented that would pave the way for a Federal preemption, § 863(f)(1) is specifically constructed to avoid having such a conflict arise, and **there can be no positive conflict when the Federal law is explicitly linked to State legalization regimes**.

CBP has not pointed out any conflict between Federal law and State law that creates an irreconcilable conflict and therefore invokes preemption of State law. While the Federal government may regulate drug paraphernalia moving in interstate commerce, the various States remain free to regulate drug paraphernalia within their borders. But just because the Federal Government *can* prohibit the importation of marijuana-related "drug paraphernalia," here, Congress clearly chose not to and instead empowered the States to determine how, and whether, to authorize "drug paraphernalia."

**C.    The Government's Argument, if Sustained, Would Infringe Upon the Rights of the State of Washington, in Violation of the Tenth Amendment to the United States Constitution and the "Anticommandeering" Principle.**

Federal efforts to regulate drugs run the risk of impinging on State police powers, in violation of the Tenth Amendment to the U.S. Constitution, which provides that "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." U.S. Const. amend. X. The Constitution contains no Federal police power; the Federal government may exercise only those powers expressly granted to it in the Constitution. *U.S. v. Morrison*, 529 U.S. 598, 618 (2000); *Bond v. U.S.*, 572, U.S. 844, 854

(2014); *United States v. Lopez*, 514 U.S. 549, 552 (1995); *Mugler v. Kansas,* 123 U.S. 623, 658-659 (1887). State "police power" is understood to mean the capacity of the States to regulate behavior and enforce order within their territories for the betterment of the health, safety, morals and general welfare of their inhabitants. The term refers not merely to activities of police officials but embraces broad government regulatory powers. *Berman v. Parker*, 348 U.S. 26, 32 (1954).

Contrary to CBP's argument, Section 863 does not impose conditions on Washington State's "authorization" of persons to possess and distribute marijuana processing equipment. The "anticommandeering" doctrine, as adopted by the Supreme Court, precludes Federal Government efforts to dictate how the States should exercise their police powers.

In explaining the anticommandeering principle, the Supreme Court in *Murphy* noted*:*

> Although the anticommandeering principle is simple and basic, it did not emerge in our cases until relatively recently, when Congress attempted in a few isolated instances to extend its authority in unprecedented ways. The pioneering case was *New York v. United States*, 505 U. S. 144, 112 S. Ct. 2408, 120 L. Ed. 2d 120 (1992), which concerned a federal law that required a State, under certain circumstances, either to "take title" to low-level radioactive waste or to "regulat[e] according to the instructions of Congress." *Id*., at 175, 112 S. Ct. 2408, 120 L. Ed.2d 120. In enacting this provision, Congress issued orders to either the legislative or executive branch of state government (depending on the branch authorized by state law to take the actions demanded). Either way, the Court held, **the provision was unconstitutional because "the Constitution does not empower Congress to subject state governments to this type of instruction."** *Id*., at 176, 112 S. Ct. 2408, 120 L. Ed. 2d 120.

138 S. Ct. at 1476 (emphasis added); *see also Kansas v. Garcia*, 140 S. Ct. 791 (2020).

Additionally, Justice O'Connor's majority opinion in *New York v. United States* noted that the Constitution "confers upon Congress the power to regulate individuals, not States." 505 U.S. 144, 166 (1992). Thus, she wrote, "no Member of the Court ha[d] ever suggested" that even "a particularly strong federal interest… would enable Congress to command a state government to enact state regulation." *Id*. at 178. Continuing, the Court held, "[w]e have always understood that even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts[,]" *id.* at

166, and that "Congress may not simply 'commandee[r] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.'" *Id*. at 161 (quoting *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc*., 452 U.S. 264, 288 (1981))."Where a federal interest is sufficiently strong to cause Congress to legislate, it must do so directly; it may not conscript state governments as its agents." *Id*. at 178.

Since that time, the Supreme Court has used the anticommandering principle to strike down as unconstitutional, for example, Federal laws requiring State police officers to conduct background checks andperform certain operations in connection with firearms. *Printz v. United States*, 521 U.S. 898, 923-24 (1997). Striking down the PAPSA provisions that purported to impose Federal requirements on State regulation of gambling, the Court in *Murphy* noted that:

> The PASPA provision at issue here—prohibiting state authorization of sports gambling—violates the anticommandeering rule. That provision unequivocally dictates what a state legislature may and may not do. And this is true under either our interpretation or that advocated by respondents and the United States. In eitherevent, state legislatures are put under the direct control of Congress. It is as if federal officers were installed in state legislative chambers and were armed with the authority to stop legislators from voting on any offending proposals. A more direct affront to state sovereignty is not easy to imagine.

138 S. Ct. at 1478. Similarly, any suggestion in this case that the "persons authorized" language in 21 U.S.C. § 863(f)(1) should be interpreted to impose conditions on how Washington State may "authorize persons" to manufacture, possess, or distribute marijuana harvesting and processing equipment would run afoul of the anticommandeering rule.

## **CONCLUSION**

CBP's exclusion of Keirton's merchandise is unlawful and disregards the clear intent of Congress and the interpretation by the Supreme Court. Washington State has legalized the possession, manufacture, and distribution of marijuana drug paraphernalia with a robust taxation and regulatory scheme. This goes beyond simply removing the threat of prosecution, and the repeal of a prior prohibition constitutes authorization for Keirton to manufacture and distribute its

merchandise. CBP's conception of "authorization" is incorrect and contrary to Congressional

intent and judicial interpretation. As of such, CBP wrongfully excluded Keirton's merchandise

from entry, and its deemed denial of Keirton's protest is unlawful.


DATED:  May 2, 2022                    BUCHALTER
                                       A Professional Corporation


                                       By: *s/ Bradley P. Thoreson*_____
                                           Bradley P. Thoreson, WSBA #18190
                                           bthoreson@buchalter.com
                                           Ann Y. Gong, WSBA #50864
                                           agong@buchalter.com

                                           1420 Fifth Avenue, Suite 3100
                                           Seattle, WA 98101-1337
                                           206-319-7052

                                           *Attorneys for Plaintiff Keirton USA, Inc.*

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: HONORABLE CLAIRE R. KELLY**

---------------------------------------------------------------------- X
                                                                      :
**KEIRTON USA, INC., a Washington Corporation,**   :   Case No.: 1:21-cv-00452-CRK
                                                                      :
          **Plaintiff,**                                    :   CASE NO.: 1:21-CV-00452-CRK
                                                                      :   RESPONSE IN OPPOSITION TO
          **vs.**                                            :   DEFENDANT'S CROSS MOTION
                                                                      :   FOR JUDGMENT ON THE
**U.S. CUSTOMS AND BORDER PROTECTION, a**   :   PLEADINGS AND REPLY IN
**federal agency,**                                  :   SUPPORT OF PLAINTIFF'S
                                                                      :   MOTION FOR JUDGMENT ON
          **Defendant.**                                :   THE PLEADINGS
                                                                      :
---------------------------------------------------------------------- X

## CERTIFICATE OF COMPLIANCE

Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in reliance upon the word count feature of the word processing program used to prepare the instant Memorandum, I, Bradley P. Thoreson, who is responsible for the instant Memorandum, certify that it contains 8,217 words.

Respectfully submitted,

/s/ Bradley P. Thoreson
Bradley P. Thoreson