UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, JUDGE

---

| | |
|---|---|
| KEIRTON USA, INC., | : |
| | : |
| Plaintiff, | : |
| | : Court No. 21-00452 |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |

---

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS
CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

                    BRIAN M. BOYNTON
                    Principal Deputy Assistant Attorney General

                    PATRICIA M. McCARTHY
                    Director

                    JUSTIN R. MILLER
                    Attorney in Charge
                    International Trade Field Office

                    AIMEE LEE
                    Assistant Director

Of Counsel:                LUKE MATHERS
Alexandra Khrebtukova     GUY EDDON
Mathias Rabinovitch        Trial Attorneys
Office of the Assistant Chief Counsel   Department of Justice, Civil Division
International Trade Litigation      Commercial Litigation Branch
U.S. Customs and Border Protection   26 Federal Plaza, Room 346
                            New York, New York 10278
                            (212) 264-9232 or 9230
June 6, 2022               *Attorneys for Defendant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.    Keirton Is Not Authorized By Washington State Law To Manufacture, Possess, Or Distribute Marijuana Paraphernalia ................................................................................ 2

    II.   Keirton's Interpretation of "Authorized" Is Not Supported By *Murphy* ............................. 6

    III.  Keirton's Remaining Arguments Are Meritless .................................................................. 11

CONCLUSION ........................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. United States*, Civil No. L-07-234, 2009 WL 3878282 (D. Md. Nov. 16, 2009). 3, 10

*Env't Def. v. Duke Energy Corp.*, 549 U.S. 561 (2007) ............................................................. 7, 9

*F.E.R.C. v. Mississippi*, 456 U.S. 742 (1982) ................................................................................ 12

*Gonzales v. Oregon*, 546 U.S. 243 (2006) .............................................................................. 11, 12

*Gonzales v. Raich*, 545 U.S. 1 (2005) ............................................................................................ 3

*Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264 (1981) ....................... 12

*In re Ultra Trimmer, L.L.C.*, 2016 WL 7385764 (T.T.A.B. Nov. 29, 2016) .................................. 3

*Meloulli v. Lynch*, 575 U.S. 798 (2015) ......................................................................................... 4

*Murphy v. NCAA*, 138 S. Ct. 1461 (2018) .............................................................................. *passim*

*Quarles v. United States*, 139 S. Ct. 1872 (2019) ..................................................................... 4, 11

*South Carolina v. Baker*, 485 U.S. 505 (1988) ........................................................................ 12, 13

*United States v. Norberto*, 373 F. Supp. 2d 150 (E.D.N.Y. 2005) ................................................. 8

*United States v. Sullivan*, 274 U.S. 259 (1927) ............................................................................. 5

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489 (1982) ................................ 4

*Washington Cty. v. Gunther*, 452 U.S. 161 (1981) ........................................................................ 9

**Statutes**

18 U.S.C. § 1953(b)(2) ................................................................................................................ 8, 9

18 U.S.C. § 1953(b)(6) ................................................................................................................ 8, 9

21 U.S.C. § 823(f) ........................................................................................................................... 3

21 U.S.C. § 863(a)(3) ...................................................................................................................... 1

21 U.S.C. § 863(c) .......................................................................................................................... 3

21 U.S.C. § 863(f)(1) .............................................................................................................. *passim*

21 U.S.C. § 863(f)(2) .................................................................................................................. 4, 8

21 U.S.C. § 903 .................................................................................................................. 12

**Other Authorities**

Kerry Murphy Healey, National Institute of Justice, U.S. Department of Justice, *State and Local Experience with Drug Paraphernalia Laws* (Feb. 1988), available at https://www.ojp.gov/pdffiles1/Digitization/109977NCJRS.pdf ........................................... 4, 11

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| KEIRTON USA, INC., : | |
| : | |
| Plaintiff, : | |
| : | Court No. 21-00452 |
| v. : | |
| : | |
| UNITED STATES, : | |
| : | |
| Defendant. : | |
| : | |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS
CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant, the United States, respectfully submits this reply brief in further support of its cross-motion for judgment on the pleadings pursuant to USCIT Rule 12(c).

**INTRODUCTION**

Plaintiff Keirton USA, Inc. (Keirton) attempted to import marijuana paraphernalia into the United States through the Port of Seattle, Washington, in violation of 21 U.S.C. § 863(a)(3). The sole issue before the Court is whether Keirton meets the express statutory requirements of § 863(f)(1)'s narrow exemption for "any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items." It does not. Keirton has not shown that the state of Washington has "authorized" it—specifically empowered, endowed, or appointed Keirton with authority—rather than merely allowed it to "manufacture, possess, or distribute" marijuana paraphernalia in the face of § 863(a)'s uniform Federal ban.

Rather than confront the points we raise head-on, Keirton advances several arguments that fail to support its claimed exemption: Washington state legalized (rather than decriminalized) marijuana; Federal drug law does not preempt state drug law; and the Federal Government cannot commandeer the states into outlawing drug paraphernalia. These arguments

say nothing about the meaning of "authorized" in the context of the Controlled Substances Act, which must mean more than simply "lawful" because Congress distinguished between the two in § 863 and because drug-paraphernalia possession is already legal under Federal law. Keirton relies on broad language from *Murphy v. NCAA*, but in that case the Court interpreted authorization under a completely different statute so as not to "ignore[] the situation that Congress faced when it enacted [the Professional and Amateur Sports Protection Act of 1992]," the law at issue in *Murphy*, or "lead[] to results that Congress is most unlikely to have wanted." 138 S. Ct. 1461, 1475 (2018). Keirton's understanding of "authorized," which eschews the text, structure, and purpose of the Controlled Substances Act, would do just that. Congress could not have intended to let a state exempt everyone from § 863(a)'s prohibitions through mere legislative implication or inaction—an unadministrably "nebulous regime," *Murphy*, 138 S. Ct. at 1475.

For the reasons explained in our cross-motion for judgment on the pleadings and further elucidated below, Keirton's arguments fail as a matter of law, and the Court should find that its actions are prohibited by § 863.

## **ARGUMENT**

### I. Keirton Is Not Authorized By Washington State Law To Manufacture, Possess, Or Distribute Marijuana Paraphernalia

To qualify for the narrow § 863(f)(1) exemption, Keirton must be a "person authorized by local, State, or Federal law" to "manufacture, possess, or distribute" the imported marijuana paraphernalia at issue. But Keirton is not authorized by Washington law within the meaning of § 863(f)(1).

As we explained in our opening brief, a "person authorized" is a person who has been "endowed with authority," "placed in a position of authority," or "formally appointed to a

2

particular role or duty." Defendant's Cross-Motion for Judgment on the Pleadings, ECF No. 21 (Gov't Br.) at 11–12 (citing common definitions). This common understanding of "person authorized" is required by the plain language of § 863. For example, § 863(c) allows the Administrator of General Services to "authorize" the use of seized and forfeited drug paraphernalia "for law enforcement or educational purposes by Federal, State, or local authorities"—a specific, affirmative endowment of authority. The Controlled Substances Act is replete with similar examples of authorization that require formal approval like a prescription, registration, or license. Gov't Br. at 14–15 (citing 21 U.S.C. §§ 844(a), 872(e), and 882(b)); *see also* 21 U.S.C. § 823(f) ("The Attorney General shall register practitioners [*i.e.*, medical professionals] … to dispense, or conduct research with, controlled substances … if the applicant is authorized to dispense, or conduct research with respect to, controlled substances under the laws of the State in which he practices.").

Our reading of "person authorized" is consistent with the Act's objective of outlawing the drug trade across the nation, except under narrow circumstances that entail "strict requirements" like "registration," "drug security, and recordkeeping." *Gonzales v. Raich*, 545 U.S. 1, 13–14 (2005). Strict requirements are undoubtedly what Congress envisioned when it used the phrase "person authorized" in § 863(f)(1), as the few authorities to pass on that section suggest. *Anderson v. United States*, Civil No. L-07-234, 2009 WL 3878282, at *3 (D. Md. Nov. 16, 2009) (rejecting petitioner's argument that a local license to engage in a retail business and Customs' allowing his importation of mannitol authorized him to possess mannitol via § 863(f)(1)); *In re Ultra Trimmer, L.L.C.*, 2016 WL 7385764, at *5 & n.7 (T.T.A.B. Nov. 29, 2016) (applicant had not "received a license or other manifestation of authorization from any local, State, or Federal governmental authority to manufacture, possess, or distribute [marijuana] paraphernalia,"

3

despite 42 or 45 states having legalized marijuana in some form). If Congress wanted legalization to suffice, it would have used the word "lawful," just as it did in § 863(f)(2). *Cf. id.* (exempting tobacco paraphernalia sold, imported, or exported "in the normal lawful course of business"). And if Congress wanted the exemption to apply broadly to items rather than specific persons, it would have used the word "item," as it also did in § 863(f)(2).

But if there were any doubt about what "person authorized" means in § 863 (which there is not), one need only consider that under Federal law, it is *legal to possess* drug paraphernalia. *See* 21 U.S.C. § 863(a) (outlawing the sale, import, and export of drug paraphernalia, but not possession).[1] *Meloulli v. Lynch*, 575 U.S. 798, 803–04 (2015). Thus, if the mere exclusion of certain activity from a criminal prohibition constituted authorization, then § 863 would be nullified, because the lawful possession of drug paraphernalia under Federal law would exempt all from § 863(a)'s grasp. *See* 21 U.S.C. § 863(f)(1) ("any person authorized by … Federal law to … possess" drug paraphernalia is exempt from § 863). A court, however, "should not lightly conclude that Congress enacted a self-defeating statute." *Quarles v. United States*, 139 S. Ct. 1872, 1879 (2019).

In response, Keirton offers that Washington *legalized* marijuana; it did not merely *decriminalize* it. Pl.'s Resp. in Opp. to Def.'s Cross Mot. for J. on the Pleadings, ECF No. 22 (Keirton Br.) at 1–11. But this asserted distinction does not advance Keirton's argument. Drug-paraphernalia possession is legal under Federal law, but as noted, if that were the standard then

---

[1] This is also true of some pre-§ 863 drug paraphernalia laws that states and localities enacted. *See, e.g.*, *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 506 (1982) (village ordinance prohibited only the sale of drug paraphernalia without a license). For a survey of state drug paraphernalia laws as of early 1988, *see* Kerry Murphy Healey, National Institute of Justice, U.S. Department of Justice, *State and Local Experience with Drug Paraphernalia Laws* 111–136 (Feb. 1988), available at https://www.ojp.gov/pdffiles1/Digitization/109977NCJRS.pdf.

§ 863 would be rendered meaningless. For this reason the relevant Federal, state, or local law must do more than just legalize the conduct at issue. Something more—a person-specific affirmative endowment of authority or formal appointment—is necessary.

Keirton points out that Washington "robustly" taxes marijuana. Keirton Br. at 9–10. That, too, is beside the point. This is a marijuana *paraphernalia* case, for one. Taxation, like the word "legalization," says nothing of whether Washington has "authorized" Keirton within the meaning of § 863. Much economic activity is taxed. Even income from illegal activities is taxable and must be reported to the IRS. *United States v. Sullivan*, 274 U.S. 259 (1927). Taxation is not authorization.

Keirton also argues that it does not require a marijuana retailer license because its merchandise is excluded from the definition of marijuana paraphernalia under Washington law. Keirton Br. at 10–11. This argument likewise misses the mark. A licensing scheme is just one possible example of authorization within the meaning of § 863(f)(1). That Keirton's merchandise may be regulated in ways different from other types of marijuana paraphernalia, or not at all, simply reinforces our point—legalization is not synonymous with authorization. Gov't Br. at 16. A tangled web of state-law implications that would ostensibly apply to anyone in the nation, *see* Keirton Br. at 10–11 & n.11 (citing Wash. Admin. Code §§ 314-55-010(27), 314-55-079, and 314-55-104), is not the person-specific endowment of authority or formal appointment to engage in otherwise unlawful activity that Congress contemplated when using the word "authorize" consistently throughout the Controlled Substances Act.

Our plain reading of "person authorized" is therefore the better one, and this Court should find that Keirton is not authorized under § 863(f)(1).

## II. Keirton's Interpretation of "Authorized" Is Not Supported By *Murphy*

The only interpretive discussion of the meaning of "authorized" that Keirton offers in its response is a reference to *Murphy v. NCAA*. Keirton Br. at 12–16. But *Murphy* is distinguishable for all of the reasons we explained in our opening brief, Gov't Br. at 16–18—reasons that Keirton glosses over in a footnote, Keirton Br. at 15 n.10. *Murphy* does not support Keirton's interpretation of § 863(f)(1), an interpretation that ignores the text of the Controlled Substances Act and produces results that Congress could not have intended.

In *Murphy*, the Court interpreted the Professional and Amateur Sports Protection Act of 1992, Pub. L. 102–559, 106 Stat. 4227 (1992) (PASPA). PASPA required states to outlaw sports gambling schemes and, specifically, made it "'unlawful' for a State or any of its subdivisions 'to sponsor, operate, advertise, promote, license, or authorize by law or compact … a lottery, sweepstakes, or other betting, gambling, or wagering scheme based … on' competitive sporting events." *Murphy*, 138 S. Ct. at 1470 (footnote omitted) (quoting 28 U.S.C. § 3702(1)). The Federal Government could have outlawed sports gambling schemes itself. But by forcing the states to outlaw them instead, the Federal Government placed the burden of enforcement on the states. *Id.* Thus, a state that chose to not prohibit sports gambling schemes—for instance, through partial or total repeals of prior prohibitions, or maybe even through refusal to enforce existing laws—violated PASPA. New Jersey's repeal of its sports-gambling prohibition in *Murphy* accordingly violated PASPA, which in turn allowed the Court to hold that PASPA itself violated the Constitution's anticommandeering doctrine by telling the states what laws to make and enforce. *Id.* at 1474, 1478.

Keirton plucks *Murphy*'s discussion of authorization out of its context, resulting in an implausible interpretation of § 863. Keirton Br. at 14. A narrow reading of "authorize" in PASPA would have "ignore[d] the situation that Congress faced when it enacted PASPA" and

6

led "to results that Congress is most unlikely to have wanted"—that is, allowing sports gambling schemes in some circumstances where a state has departed from its ban, but not others. *Murphy*, 138 S. Ct. at 1475. But this is exactly what § 863 envisions. Not all states and localities had elected to outlaw drug paraphernalia when the Mail Order Drug Paraphernalia Control Act was passed in 1986. Gov't Br. at 4 & n.3; *see* note 1 above. Congress thus understood that drug paraphernalia was legal under some state and local laws, yet still enacted a Federal ban without providing express "grandfather" provisions for those states and localities, like Congress did in PASPA. *Cf. Murphy*, 138 S. Ct. at 1471. And unlike with PASPA, Congress carved out a narrow opportunity for all states and localities—including those where drug paraphernalia was already legal—to authorize specified persons to take advantage of an exemption to engage in otherwise Federally illegal activity. What Congress was "most unlikely to have wanted" in PASPA, *i.e.*, a Federal ban with limited state authorizations, is just what Congress intended in § 863 and the rest of the Controlled Substances Act. This opposite context supports an opposite interpretation. *See Env't Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) ("Most words have different shades of meaning and consequently may be variously construed … when they occur in different statutes ….") (quotation omitted).

Moreover, unlike PASPA, § 863 contemplates authorization by Federal law. As we explain above and in our opening brief, that difference is important. If mere exclusion of an activity from a ban were authorization, then Federal law, which makes drug-paraphernalia possession legal, would exempt all from § 863 and render it nugatory. Gov't Br. at 12–13, 18. PASPA, by contrast, did not contemplate Federal authorization—or any authorization, for that matter—which counsels against plucking *Murphy*'s interpretation of "authorize" out of its context. The relevant context here is the Controlled Substances Act, which, as explained,

7

uniformly uses "authorize" to mean a person-specific endowment with authority or formal appointment to do something that would otherwise violate Federal law.

But even if Federal gambling laws like PASPA were to bear on the interpretation of "person authorized" in a section of the Controlled Substances Act, the right comparator would be 18 U.S.C. § 1953, which the Court in *Murphy* cites in its severability analysis. *Murphy*, 138 S. Ct. at 1483. That section "criminalizes the interstate transmission of wagering paraphernalia," *id.*, but exempts from its reach wagering paraphernalia that is transmitted to a state where "betting is legal," 18 U.S.C. § 1953(b)(2). Notably, Congress also distinguished between legalization and authorization as § 1953(b)(6) exempts transmitting wagering paraphernalia to a foreign country for use "in a lottery which is authorized by the laws of that foreign country." *Compare* 21 U.S.C. § 863(f)(1) ("person authorized"), *with id.* § 863(f)(2) ("lawful course of business").

Authorization under § 1953(b)(6), like § 863, must be specific. The exemption requires more than merely showing that a foreign country "permits lotteries in general"; there must instead be affirmative "formal approval" of the lottery in question. *United States v. Norberto*, 373 F. Supp. 2d 150, 155–56 (E.D.N.Y. 2005) ("Thus, the word 'authorize' does not merely mean 'to permit' or 'to allow[.]' … Rather, according to the plain meaning of the word 'authorize' there must be an affirmative granting of formal approval or permission to allow the conduct in question."). Specifically, the *Norberto* court held that it was insufficient that the foreign countries to which the defendants shipped Spanish lottery paraphernalia "permit[ted] lotteries in general, and/or permit[ted] its citizens to play the lotteries of another country." *Id.* at 155. Those countries instead had to authorize—or affirmatively grant formal approval of— participation "in lotteries administered by Spain." *Id.* at 156.

8

The same reading applies to § 863. Authorization—formal, affirmative approval—must be specific to a person, just as it must be specific to a lottery under § 1953(b)(6). *Compare* 18 U.S.C. § 1953(b)(6) ("lottery … authorized"), *with* 21 U.S.C. § 863(f)(1) ("person authorized"). And when Congress intends to tie Federal prohibitions to state legalization, it knows how to do so: by providing an exemption where state law has made the prohibited activity "legal." *See* 18 U.S.C. § 1953(b)(2). When Congress carves out a narrower exemption that maintains a Federal ban, it instead uses the word "authorize," just as it does in the Controlled Substances Act.

Keirton's main argument is that *Murphy* holds a repeal of a prior prohibition is authorization in the context of PASPA. Keirton Br. 14–15 & n.10. But there is little textual justification to conclude that the word "authorize" in § 863 means the same thing that it meant in PASPA. *See Env't Def.*, 549 U.S. at 574; *see, e.g.*, *Washington Cty. v. Gunther*, 452 U.S. 161, 169 (1981) ("Although the word 'authorize' sometimes means simply 'to permit,' it ordinarily denotes affirmative enabling action."). As explained, § 863 would be inoperative if it did. "The concept of state 'authorization' makes sense only against a backdrop of prohibition *or regulation*. A State is not regarded as authorizing everything that it does not prohibit *or regulate*." *Murphy*, 138 S. Ct. at 1474 (emphasis added). Keirton overlooks that there is a backdrop of Federal drug-paraphernalia regulation that allows possession, which would, under its interpretation, constitute authorization for everyone and render the law null.

Keirton also dodges the practical consequences of its interpretation. We explained, contrary to Keirton's suggestion, Keirton Br. at 12 n.9, that under the plain reading of § 863(f)(1), a person-specific endowment of authority or formal appointment constitutes authorization. That interpretation not only comports with the text, structure, and purpose of § 863, it is also administrable. An importer can furnish a license, permit, or similar person-

9

specific, formal approval from a locality, state, or the Federal Government to "manufacture, possess, or distribute" the imported merchandise.

Keirton, however, would have Customs hunt through the regulatory history of Washington state for clues: a prior prohibition, exemptions from definitional provisions, and exemptions from licensing requirements, among other minutiae of state law and regulation. *See* Keirton Br. at 10–11 & n.11 (citing Wash. Admin. Code §§ 314-55-010(27), 314-55-079, and 314-55-104). Customs would even be required to consider whether non-enforcement of existing prohibitions constitutes authorization. *Cf. Anderson*, 2009 WL 3878282, at *3 (Customs' allowing the petitioner to import mannitol did not constitute authorization under a reading of § 863(f)(1)). According to Keirton, that evaluation could include consideration of what "legal scholars" think. Keirton Br. at 6–7. Nowhere, however, does Keirton explain whether this authorization by implication would apply to everyone in the country, only to those in Washington, only to Washington residents, or to some other group. Gov't Br. at 24 n.12. These complicated inquiries would apply to local laws and regulations, too. Simply put, this cannot be the "nebulous regime" that Congress meant to enact, *Murphy*, 138 S. Ct. at 1475, when using the word "authorized" in a narrow exemption, and in the same manner it used that word throughout the Controlled Substances Act. Our interpretation, meanwhile, hews to the Act's text, structure, and purpose in an administrable manner.

Nor does Keirton address congressional purpose. While the *Murphy* Court's interpretation of authorization in PASPA was consistent with what Congress intended, Keirton's interpretation of § 863 "ignores the situation that Congress faced when it enacted" that law, "lead[ing] to results that Congress is most unlikely to have wanted." 138 S. Ct. at 1475. Take even the most limited version of Keirton's argument: that legalization would "authorize" only

10

those in Washington state to "manufacture, possess, or distribute" marijuana paraphernalia within Washington's borders, beyond which § 863's prohibitions would kick in. But this reading contradicts § 863's purpose, as embodied in its plain text. If § 863 were meant to merely Federalize state and local law, the (f)(1) exemption would have used the word "legal" rather than "authorized," just as § 1953(b)(1) and (2) do. Rather, a uniform Federal ban was Congress' goal. Section 863 was designed to close a "giant loophole" that allowed interstate trade in drug paraphernalia and that could not "be handled on the State level." Gov't Br. at 4–5 & n.4; *see* Karen Murphy Healey, National Institute of Justice, U.S. Department of Justice, *State and Local Experience with Drug Paraphernalia Laws* 60–61 (Feb. 1988), available at https://www.ojp.gov/pdffiles1/Digitization/109977NCJRS.pdf (explaining the loophole and noting that the recently enacted Mail Order Drug Paraphernalia Control Act could help close it). Reading the exemption Keirton's way would therefore transform § 863 into a "self-defeating statute." *Quarles*, 139 S. Ct. at 1879.

Keirton's broad reading of § 863(f)(1) could recreate, on one state or locality's whim, the very loophole that Congress intended to close. To that, and to our point that exemptions like § 863(f)(1) are narrowly construed, Gov't Br. at 18–21, Keirton has no response. The plain language of § 863(f)(1), as confirmed by its purpose, contemplates authorization—a person-specific, affirmative empowerment or formal appointment—rather than mere legalization.

**III.    Keirton's Remaining Arguments Are Meritless**

Finally, Keirton raises 21 U.S.C. § 903 and the anticommandeering doctrine as reasons for adopting its interpretation. Keirton Br. at 15–20. These arguments fall short.

First, § 903 is not a "canon of construction." Keirton Br. at 15. It is a "pre-emption provision." *Gonzales v. Oregon*, 546 U.S. 243, 251 (2006). It provides that nothing in the Controlled Substances Act should be understood to "occupy the field" such that all state

legislation on the subject of drugs is automatically preempted. 21 U.S.C. § 903. That is why Federal law does not preempt state regulation of doctors, for instance. *Oregon*, 546 U.S. at 269–71. But preemption is not at issue—rather, the issue is what "person authorized" means for the purposes of a Federal exemption from a Federal ban. Our plain-language interpretation of that phrase does not implicate the preemption concerns that Keirton raises.

Second, the anticommandeering doctrine is inapplicable here. It is true that under that doctrine, the Federal Government cannot tell state legislatures what they "may and may not do." *Murphy*, 138 S. Ct. at 1478. But there is no regulation of the states in § 863(f)(1). It does not tell states to authorize, or prevent states from authorizing, anyone. A state is thus free to ban drug paraphernalia, legalize it, license it, or do nothing, among other things. Section 863(f)(1) does not even tell states to *consider* regulating in a certain way (which, in any event, is not a commandeering problem, *F.E.R.C. v. Mississippi*, 456 U.S. 742, 764 (1982)). Nor does it compel states to enforce Federal law, "to expend any state funds, or to participate in [a] federal regulatory program in any manner whatsoever." *Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 288 (1981).

Taken to its logical extreme, Keirton's argument would imply that any Federal statute allowing exemptions based on state law under certain circumstances—or even not providing exemptions at all—impermissibly "impose[s] conditions on how" a state may legislate. Keirton Br. at 20. But that is not the law. If it were, "any State could immunize its activities from federal regulation by simply codifying the manner in which it engages in those activities." *South Carolina v. Baker*, 485 U.S. 505, 515 (1988). To the contrary, however, a "federal income tax exemption for interest earned on [certain] bonds issued by state and local governments" that applies only if "those bonds are issued in registered form" does not commandeer the states, even

12

if it requires them to change their laws to take advantage of the exemption. *Id.* at 507–08, 511–15. The same is true here. That a state must do more than legalize marijuana to confer the benefit of the § 863(f)(1) exemption on a specified individual is not a commandeering problem.

## CONCLUSION

For these reasons, we respectfully request that the Court enter judgment for the United States and dismiss this action.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Luke Mathers
LUKE MATHERS
GUY EDDON
Trial Attorneys
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Alexandra Khrebtukova
Mathias Rabinovitch
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

June 6, 2022

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| KEIRTON USA, INC. | : |
| Plaintiff, | : |
| v. | : Court No. 21-00452 |
| UNITED STATES, | : |
| Defendant. | : |

**CERTIFICATE OF COMPLIANCE**

    I, Luke Mathers, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's reply, dated June 6, 2022, relying upon the word count feature of the word processing program used to prepare the reply, certify that this reply complies with the word count limitation under the Court's chambers procedures, and contains 3,860 words.

/s/ Luke Mathers