Slip Op. 23-47

## UNITED STATES COURT OF INTERNATIONAL TRADE

KEIRTON USA, INC.,

      Plaintiff,

v.

UNITED STATES,

      Defendant.

Before: Claire R. Kelly, Judge

Court No. 21-00452

## OPINION AND ORDER

[Denying plaintiff's application for attorney fees and other expenses incurred in its action against the United States for excluding its merchandise from entry into the United States.]

Dated: April 11, 2023

Bradley P. Thoreson, Buchalter, of Seattle, WA, for plaintiff Keirton USA, Inc.

Luke Mathers, Trial Attorney, and Aimee Lee, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for defendant United States. Also on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Justin R. Miller, Attorney in Charge, International Trade Field Office, and Guy R. Eddon, Trial Attorney. Of counsel on the brief were Alexandra Khrebtukova and Mathias Rabinovitch, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

     Kelly, Judge: Before the court is Keirton USA, Inc.'s application for fees and other expenses pursuant to the Equal Access to Justice Act ("EAJA"). Appl. for Fees and Other Expenses Pursuant to the [EAJA], Jan. 17, 2023, ECF No. 33 ("Pl. Mot."); see EAJA, 28 U.S.C. § 2412 (2018); see also Pl.'s Pet. for Att'ys' Fees and Costs, Jan. 17, 2023, ECF No. 33-1 ("Pl. Br."); USCIT R. 54.1. Keirton requests fees and expenses

in the amount of $487,198.31 it incurred as the prevailing party in its action against

U.S. Customs and Border Protection ("CBP").  Pl. Mot. at 1–2; see Keirton USA, Inc.

v. United States, 600 F. Supp. 3d 1270, 1276 (Ct. Int'l Trade 2022) ("Keirton I").

Defendant denies that Keirton is entitled to its fees and expenses under the EAJA.

Def.'s Mem. Opp. [Pl. Mot.] at 5–17, Mar. 17, 2023, ECF No. 36 ("Def. Br.").

## BACKGROUND

The court presumes familiarity with the facts of this case as set out in its

previous opinion holding that Keirton's possession and importation of marijuana

paraphernalia was lawful, see Keirton I, 600 F. Supp. 3d at 1276, and now recounts

only those facts relevant to the court's review of Keirton's application for fees and

expenses.  Keirton alleges that, from October to December 2020, CBP seized fourteen

shipments of its merchandise claiming that merchandise would be used for an

unlawful purpose.  Compl. ¶ 12, Aug. 19, 2021, ECF No. 2.

In April 2021, CBP excluded from entry merchandise Keirton entered under

No. SQ4-03475065 (the "subject merchandise"), citing the Controlled Substances Act

of 1970, 21 U.S.C. § 801 et seq., after Keirton confirmed that the subject merchandise

could be used in the cannabis industry.  Compl. ¶¶ 27, 30; Answer ¶¶ 27, 30, Nov. 17,

2021, ECF No. 14.  Keirton protested CBP's exclusion of the subject merchandise on

June 15, 2021.  Compl. ¶ 23; Answer ¶ 23.  CBP did not allow or deny Protest No.

3002-21-103719, rendering it denied by operation of law.  Compl. ¶¶ 23, 31; Answer

¶¶ 23, 31.  Keirton filed the present action for release of the subject merchandise

before this court in August 2021.  Compl. at 5–6.  On October 20, 2022, the court

issued judgment for Keirton.[1]  Keirton I, 600 F. Supp. 3d at 1276; J., Oct. 20, 2022,

ECF No. 32.  Keirton requests $479,299.00 in attorney fees and $7,899.31 in expenses

for a total of $487,198.31.[2]  Pl. Mot. at 2; Pl. Br. at 19.

## JURISDICTION AND STANDARD OF REVIEW

The court exercises jurisdiction pursuant to 28 U.S.C. § 1581(a) (2018) over

Keirton's challenge to CBP's denial of its protest of a deemed exclusion made

pursuant to section 514 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514(a)(4)

(2018).[3]  The court retains jurisdiction after issuing judgment to adjudicate parties'

timely application for fees and expenses.  See 28 U.S.C. § 2412(b), (d)(1)(A) (fees and

---

[1] For its application of fees and expenses, Keirton describes three "discreet parts" of the case against Defendant.  See Pl. Br. at 15–18.  First, Keirton alleges it settled with CBP to turn over the fourteen shipments of components CBP seized in 2020.  Id. at 3–4.  Second, Keirton requested a temporary restraining order in November 2020 from the U.S. District Court for the Western District of Washington for CBP to release the subject merchandise CBP seized or detained in 2020.  Keirton USA, Inc. v. U.S. Customs and Border Protection, Case No. 20-1734, 2020 WL 6887871, at *1 (W.D. Wash. Nov. 24, 2020).  That court later concluded it lacked subject matter jurisdiction.  Keirton USA Inc. v. U.S. Customs and Border Protection, Case No. 21-224, 2021 WL 1516169, at *6 (W.D. Wash. Apr. 16, 2021).  Third, Keirton filed for declaratory judgment that the subject merchandise in this case should have been admitted under 21 U.S.C. § 863(f)(1).  Compl. at 5.

[2] Keirton describes the attorney fees billed for each phase of the litigation and includes a table breaking down its fees.  However, the fees in the table do not match those Keirton describes.  Keirton describes fees incurred at each of the three phases of the litigation as $113,192.10, $120,708.90, and $151,003.01, respectively.  Pl. Br. at 15–16.  The fee subtotals in the table for each of the three phases of the litigation are $147,348.00, $157,446.50, and $174,504.50, respectively.  Id. at 16–18.  It is unclear why these amounts differ in the same brief.

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

other expenses awardable "in any civil action" brought against the United States "in any court having jurisdiction of that action"); USCIT R. 54.1 (applications for attorney fees and expenses "must be filed within 30 days after the date of final judgment").

Under the EAJA, the court may grant attorney fees and other expenses to the prevailing party in an action against the United States.  28 U.S.C. § 2412(a)(1), (d)(1)(a).  The burden is on the government to demonstrate that the position it took in the action was substantially justified or that special circumstances exist making it unjust to grant the prevailing party fees and other expenses.  Scarborough v. Principi, 541 U.S. 401, 414–15 (2004); Brewer v. Am. Battle Monuments Comm'n, 814 F.2d 1564, 1569 (Fed. Cir. 1987).  The government meets its burden by a preponderance of the evidence.  De Allende v. Baker, 891 F.2d 7, 12 (1st Cir. 1989); Sumecht NA, Inc. v. United States, 437 F. Supp. 3d 1316, 1321 (Ct. Int'l Trade 2020).  The EAJA limits the court's review to the record of the civil action for which fees and other expenses are sought and the agency's action "upon which the civil action is based."  28 U.S.C. § 2412(d)(1)(B), (2)(D).

## DISCUSSION

Keirton argues that Defendant's position was not substantially justified and that no special circumstances exist making an award of attorney fees and expenses unjust.  Pl. Br. at 7–9.  Defendant argues that its position was substantially justified because the government's position was reasonable and the matter in the case was one

of first impression.  Def. Br. at 7–12.  For the following reasons, the court denies

Keirton's application for fees and other expenses.

Under the EAJA, an eligible party seeking an award of fees and other expenses

must make a proper application to the court within thirty days of final judgment.  28

U.S.C. § 2412(d)(1)(B).  The party applying for fees and other expenses must have

prevailed in court and allege that the United States' position was not substantially

justified.[4]  Id.  Once a prevailing party makes a proper application, the burden is on

the government to prove that its position in the action was substantially justified.

Scarborough, 541 U.S. at 414–15.  Alternatively, the court may find that special

circumstances exist making it unjust to grant fees and other expenses to the

prevailing party.  28 U.S.C. § 2412(d)(1)(A).[5]  The EAJA defines the "position of the

---

[4] An application for fees must include itemized statements of the time expended and
the rate at which the fees and expenses were computed for any attorney or expert
witness representing or appearing on behalf of the party.   28 U.S.C.
§ 2412(d)(1)(B).  Additionally, the prevailing party must be eligible to receive an
award under the EAJA.  Specifically, a party that is a corporation must have a net
worth that did not exceed $7,000,000 at the time the civil action was filed.  28 U.S.C.
§ 2412(d)(2)(B).  Further, the corporation must have had no more than 500 employees
at the time the action was filed.  Id.  Keirton is a business with fewer than 500
employees and is worth less than $7,000,000.  Decl. Jay Evans ¶ 2, Jan. 17, 2023,
ECF No. 33-5.  It is undisputed that Keirton and its application meet these criteria.
See Pl. Br. at 5–7; see generally Def. Br. (not disputing that Keirton prevailed or that
Keirton does not exceed the EAJA's limits on net worth and number of employees).
[5] Special circumstances include novel and credible legal theories the government
raised in good faith.  Devine v. Sutermeister, 733 F.2d 892, 895–96 (Fed. Cir. 1984).
In contrast, relitigating a settled issue does not constitute special circumstances that
would make awarding attorney fees and expenses unjust.  See Fakhri v. United

(footnote continued)

Court No. 21-00452                                                                 Page 6

United States" as not only the position the United States took in the lawsuit, but also

the agency action upon which the lawsuit is based.  Id. § 2412(d)(2)(D); see Brewer,

814 F.2d at 1569.

      Substantial justification is a test of reasonableness in both law and fact.  Pierce

v. Underwood, 487 U.S. 552, 565 (1988).  Substantial justification means justification

"that could satisfy a reasonable person."  Id.; Norris v. S.E.C., 695 F.3d 1261, 1265

(Fed. Cir. 2012).  Even if a court ultimately disagrees with the government's reading

of the law and facts, the court considers whether the government's position, as a

whole, was substantially justified.  Pierce, 487 U.S. at 566 n.2, 569–71; see Norris,

695 F.3d at 1265–66 (Fed. Cir. 2012) (holding government's position was

substantially justified where the government offered a reasonable legal argument on

an "unsettled and difficult" issue "over which reasonable minds could differ").  When

evaluating whether the government's position was substantially justified the court

considers whether, inter alia: (i) the issue is novel or a matter of first impression, i.e.,

the matter has not been clearly decided, (ii) the government had a reasonable basis

in law and fact for litigating the issue, and (iii) there is a split in applicable authority.[6]

States, 31 C.I.T. 1287, 1294 (2007) (concluding the government's position was not
novel and that this Court and the Court of Appeals twice rejected its position as
lacking merit). Because the government's position here was substantially justified,
the court does not address whether special circumstances apply.

[6] The Court of Appeals has articulated the query as both whether the government's
position was "reasonable" or "clearly reasonable."  See, e.g., Gavette v. Office of
Personnel Management, 808 F.2d 1456, 1467 (Fed. Cir. 1986) ("We hold that

(footnote continued)

See <u>Norris</u>, 695 F.3d at 1265–66; <u>DGR Assocs., Inc. v. United States</u>, 690 F.3d 1335,

1342 (Fed. Cir. 2012) (concluding the government's position was justified where there

were differing interpretations among the three branches of government as to statute's

meaning); <u>Devine v. Sutermeister</u>, 733 F.2d 892, 898 (Fed. Cir. 1984) (concluding

government's position on timeliness substantially justified where issue was novel and

subject to conflicting judicial pronouncements in other circuits), <u>superseded by</u>

<u>statute on other grounds</u> <u>Doty v. United States</u>, 71 F.3d 384, 385 (Fed. Cir. 1995);

<u>Gava v. United States</u>, 699 F.2d 1367, 1371 (Fed. Cir. 1983) (substantial justification

where issue was one of first impression and government had a reasonable basis for

litigating issue), <u>superseded by statute on other grounds</u> <u>PCI/RCI v. United States</u>,

37 Fed. Cl. 785 (1997); <u>Jazz Photo Corp. v. United States</u>, 31 C.I.T. 1101, 1109–11

(2007) (even if an issue is one of first impression the government may not advocate

for a position that is unsupportable); <u>Change-All Souls Housing Corp. v. United</u>

<u>States</u>, 1 Cl. Ct. 302, 304 (1982) (government substantially justified in case of first

impression where its position was supported by statute's legislative history).

     Here, the position of the United States was substantially justified because the

issue was a novel issue, of first impression, and the government had a reasonable

---

'substantial justification' requires that the Government show that it was <u>clearly</u>
reasonable in asserting its position . . ." (emphasis in the original)).  Whether the
court labels its analysis as reasonable or clearly reasonable, the query centers around
whether the issue is settled as a matter of law, or whether reasonable arguments can
be made for different outcomes based on either the facts or the law.  <u>Norris</u>, 695 F.3d
at 1265–66.

basis in law and fact to litigate the issue.  Both in its protest before the CBP and in this court, Keirton did not dispute that the subject merchandise could be used in the cannabis industry and stipulated that the subject merchandise met the definition of marijuana paraphernalia under federal law.  See Protest, Aug. 19, 2021, ECF No. 2-1; Mem. Points and Authorities Supp. Pl.'s Mot. J. Pleadings at 1, Jan. 5, 2022, ECF No. 17 ("Pl. Merits Br.).  The parties only disputed whether Washington State's repeal of its prohibition on marijuana paraphernalia met the exception in 21 U.S.C. § 863(f)(1) authorizing possession of marijuana paraphernalia under federal law.  See Pl. Merits Br. at 4–5; Def.'s Memo. Supp. Cross-Mot. J. Pleadings at 16–18, Mar. 28, 2022, ECF No. 21 ("Def. Merits Br.").  Specifically, the statute exempts from § 863(a)'s proscription "any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items."  21 U.S.C. § 863(f)(1).

Whether Washington State "authorized" possession of marijuana paraphernalia within the meaning of the federal statute was a matter of first impression, which implicated an important question of federalism.  Prior to Keirton filing its complaint, no court had ruled on whether Washington State's repeal of its prohibition on marijuana paraphernalia constituted "authorization" under § 863.  Although the Court ultimately ruled on this issue in Eteros Technologies USA, Inc. v. United States, 592 F. Supp. 3d 1313 (Ct. Int'l Trade 2022), that September 21, 2022

ruling was issued only after the parties filed their motions for judgment here.[7]  See Pl.'s Mot. J. Pleadings, Jan. 5, 2022, ECF No. 17; Def.'s Cross-Mot. J. Pleadings, Mar. 28, 2022, ECF No. 21.  Therefore, at the time the government took its position in this case, no court had held that Washington law authorized importation of marijuana paraphernalia under the exception to the federal prohibition on drug paraphernalia. See Bowey v. West, 218 F.3d 1373, 1377 (Fed. Cir. 2000) (noting "substantial justification is measured . . . against the case law that was prevailing at the time the government adopted its position").

The Supreme Court's holding in Murphy does not undermine the nature of the issue as one of first impression here or the reasonableness of the government in litigating the issue.  See Murphy v. NCAA, 138 S. Ct. 1461 (2018).  In Murphy, the Supreme Court held the Professional and Amateur Sports Protection Act (PASPA), 28 U.S.C. § 3702, violated the Tenth Amendment's anti-commandeering doctrine by prohibiting states from authorizing sports gambling.  Id. at 1485.  There, the New Jersey Legislature enacted a law partially repealing the state prohibition on sports gambling.  Id. at 1472.  The Court found that the partial repeal of that prohibition effectively authorized sports gambling in the state.  Id. at 1474.  The Court reasoned that although a State does not authorize "everything that it does not prohibit or

---

[7] Even had Eteros been issued earlier, it would not have bound this Court and the government may still have been substantially justified in pursuing the matter before this Court.  See Algoma Steel Corp. v. United States, 865 F.2d 240, 243 (Fed. Cir. 1989) (trial court decisions do not bind other trial courts).

Court No. 21-00452                                                                    Page 10

regulate," where it repeals old laws, "it authorizes that activity."  Id. (internal

quotations omitted).  Keirton argues that the position of the government here was

not substantially justified because Murphy had interpreted the word "authorized."

Pl. Br. at 3, 7.  However, neither § 863 nor the Washington statute was before the

Murphy Court.  See generally Murphy, 138 S. Ct. 1461.  Therefore, despite Murphy's

interpretation of "authorized," the issue here was one of first impression.  See Keirton

I, 600 F. Supp. 3d at 1274–75 (interpreting Washington state law's authorization of

marijuana paraphernalia possession under § 863).[8]

      Further, the government did not advocate for an unsupportable position under

the applicable law.   Section 863(a) makes it unlawful for a person to, inter alia,

import or export drug paraphernalia.[9]  21 U.S.C. § 863(a).  However, the statute

exempts from § 863(a)'s proscription "any person authorized by local, State, or

---

[8] Had the holding in Murphy made the Defendant's position here unreasonable,
Keirton would certainly have relied on that case in its initial brief supporting its
motion for judgment.  However, because it did not rely on Murphy, see generally Pl.
Merits Br., Keirton's argument that Murphy was dispositive of the only issue in
this case, see Pl. Br. at 4, 7, rings hollow.  See Norris, 695 F.3d at 1266 (noting the failure
to cite a case suggests the precedent's application was neither "immediately
apparent" nor "controlling").

[9] The statute defines drug paraphernalia:

    The term "drug paraphernalia" means any equipment, product, or
    material of any kind which is primarily intended or designed for use in
    manufacturing, compounding, converting, concealing, producing,
    processing, preparing, injecting, ingesting, inhaling, or otherwise
    introducing into the human body a controlled substance, possession of
    which is unlawful under this subchapter.

21 U.S.C. § 863(d).

Federal law to manufacture, possess, or distribute such items." Id. § 863(f)(1).  Thus, unless the importer has been authorized by local, State, or Federal law to manufacture, possess, or distribute such items, 19 U.S.C. § 1595a(c)(2)(A)[10] allows CBP to prevent the importation of such items.  The Washington referendum repealed portions of its law criminalizing the possession of marijuana paraphernalia.  See Initiative Measure 502, 2013 Wash. Sess. Laws ch. 3. At issue in Keirton I was whether "any person authorized" in § 863(f)(1) extends the exemption from the requirements of § 863 to all persons affected by the repeal of prior State prohibitions. See Keirton I, 600 F. Supp. 3d at 1273–75.  The government argued that Washington's repeal was not an authorization under § 863.  See Def. Merits Br. at 15.

Keirton I acknowledged that § 863 does not define the word "authorized." Keirton I, 600 F. Supp. 3d at 1274.  The government supported its position that a repeal of prior law was insufficient "authorization" under § 863 by arguing that authorization under § 863 was limited to a narrow class of actions by local state or federal governments.   See Def. Merits Br. at 15–16.  The government relied upon United States v. Assorted Drug Paraphernalia Valued at $29,627.07, 2018 WL 6630524, at *1, 8 (D.N.M. Dec. 19, 2018), which noted § 863(f)(1)'s exemption of "any person from prosecution" and § 863(f)(2)'s exemption of "any item from the definition

---

[10] "The merchandise may be seized and forfeited if . . . its importation or entry is subject to any restriction or prohibition which is imposed by law relating to health, safety, or conservation and the merchandise is not in compliance with the applicable rule, regulation, or statute . . . ." 19 U.S.C. § 1595a(c)(2)(A); see also id. § 1595a(c)(5)(B) (which allows for the exclusion of such merchandise).

Court No. 21-00452                                                                                  Page 12

of drug paraphernalia" and concluded that Congress did not intend to shield drug

paraphernalia itself from lawful forfeiture.   See Def. Merits Br. at 23.   The

government also argued that the neighboring provisions in § 863 and the Controlled

Substances Act require "deliberate, affirmative approval for an individual or entity"

to act.   Def. Merits Br. at 20.   Although the government's arguments were not

ultimately persuasive, they were nevertheless reasonable arguments at the time they

were advanced.

## CONCLUSION

Even though the government's arguments regarding the law and the facts in

Keirton I were unsuccessful, its position was substantially justified.  For the foregoing

reasons, it is

**ORDERED** that Keirton's application for fees and other expenses is denied.


                                                                           /s/ Claire R. Kelly
                                                                          Claire R. Kelly, Judge

Dated:          April 11, 2023
                New York, New York